**Gilberto MULERO RODRIGUEZ, et al., Plaintiffs,**

v.

**PONTE, INC., et al., Defendants.**

**Civ. No. 93–2790(PG).**

United States District Court, D. Puerto Rico.

June 23, 1995.

Kevin G. Little & Alberto J. Pérez–Hernández, Río Piedras, PR, for plaintiffs.

Juan Carlos Guzmán–Rodríguez, San Juan, PR, for defendants.

### OPINION AND ORDER

PEREZ–GIMENEZ, District Judge.

Pending are defendants' Motion For Summary Judgment, plaintiffs' Motion in Opposition, and defendants' Reply thereto. For the reasons set forth below, defendants' Motion for Summary Judgment is **GRANTED.**

### I.

#### Background

Ponte, Inc. is a Puerto Rico corporation that sells electrical equipment. The company is owned by members of the Ponte and Sabines families. Plaintiff Mulero was em-

ployed by Ponte, Inc. for 29 years until his discharge on January 26, 1993. He was hired initially to serve as a driver and ultimately climbed the corporate ladder to positions of store supervisor, general manager, and director. In the latter positions, which he held at the time of his discharge, Mulero bore substantial responsibility for the daily operations of the company. Mulero received compensation in the amount of $150,000.00 annually.

In late–1991, María Luisa Ponte, an owner and officer of the company, began to work at the company. She restricted Mulero's authority to hire and fire employees, requiring Mulero to seek her approval for personnel actions.

Throughout 1992, Ms. Ponte and Mulero clashed over issues relating to Mulero's job performance, benefits, and interaction with other employees. Finally, on January 26, 1993, Mulero was discharged by Haydeé Sabines and her son-in-law, Jorge Redondo, who was not employed by Ponte, Inc.

Mulero and his wife and their conjugal partnership filed this lawsuit on December 30, 1993, alleging causes of action under the Age Discrimination in Employment Act, 29 U.S.C. § 626(c) and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. Defendants are Ponte, Inc. and Haydeé Sabines, president of the company.

## II.

### Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "Where the defendant has invoked Rule 56 and asserted a lack of supporting evidence, the plaintiff must establish the existence of a triable issue which is both genuine and material to his claim." *Pagano v. Frank*, 983 F.2d 343, 347 (1st Cir.1993) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986)). "In this context, 'genuine' means

that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party [and] 'material' means that the fact is one that might affect the outcome of the suit under the governing law." *United States v. One Parcel of Real Property, Etc. (Great Harbor Neck, New Shoreham, R.I.)*, 960 F.2d 200, 204 (1st Cir. 1992).

"On issues where the nonmovant bears the ultimate burden of proof at trial, he may not defeat a motion for summary judgment by relying on evidence that is 'merely colorable' or 'not significantly probative.'" *Pagano v. Frank*, 983 F.2d at 347 (quoting *Anderson v. Liberty Lobby*, 477 U.S. at 249–50, 106 S.Ct. at 2511). The nonmovant must "present definite, competent evidence to rebut the motion." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir.1991), *cert. denied* 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992). "Summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990). Nonetheless, "[n]o credibility assessment may be resolved in favor of the party seeking summary judgment." *Woodman v. Haemonetics Corp.*, 51 F.3d 1087, 1091 (1st Cir. 1995) (citation omitted).

## III.

### Discussion

#### A.

##### The Burden–Shifting Framework

Plaintiffs and defendants are required to satisfy alternating burdens under the law applicable to claims of age- and national origin-based discrimination. The burden of "persuasion," of course, rests at all times with plaintiff; defendants bear no more than a burden of "production" at any time. *Woodman*, 51 F.3d at 1092.

First, plaintiffs must offer evidence with respect to all four parts of a so-called "prima facie" case demonstrating that an adverse employment decision was the result of

unlawful discrimination. Plaintiffs must show that the employee-plaintiff was (1) a member of a protected class, (2) met the employer's legitimate performance expectations, (3) suffered an adverse employment action, and (4) the employer sought a replacement with qualifications roughly equivalent to the employee-plaintiff's. *Woodman,* 51 F.3d at 1091; *Greenberg v. Union Camp,* 48 F.3d 22, 26 (1st Cir.1995); *Smith v. Stratus Computer, Inc.,* 40 F.3d 11, 15 (1st Cir. 1994). Plaintiffs' burden at this stage is light; if satisfied, a presumption arises that the employer engaged in unlawful employment discrimination. *Smith,* 40 F.3d at 15 (citing *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981)).

■ Defendants must respond merely by articulating a "legitimate, non-discriminatory motive" for the adverse action taken against the employee. If defendants satisfactorily shoulder this burden, the presumption of unlawful discrimination vanishes, and plaintiffs again must take the stage. *Greenberg,* 48 F.3d at 22.

■ Plaintiffs finally must offer evidence that demonstrates that defendants' proffered justification for the adverse action is an attempt to mask a pernicious, unlawful age- or national origin-based animus. "[A] disparate treatment claim cannot succeed unless the employee's protected trait actually played a role in [the decisionmaking] process and had a determinative influence on the outcome." *Hazen Paper Co. v. Biggins,* —— U.S. ——, ——, 113 S.Ct. 1701, 1706, 123 L.Ed.2d 338 (1993). There must be a "nexus" or "correlation" between the evidence reflecting bias and the adverse employment action. *Cone v. Longmont United Hosp. Ass'n,* 14 F.3d 526, 531–32 (10th Cir.1994) (citing *E.E.O.C. v. Clay Printing Co.,* 955 F.2d 936, 942 (4th Cir.1992)). To survive a motion for summary judgment, the evidence must be "adequate to enable a rational factfinder reasonably to infer that intentional age- [or national origin-] based discrimination was a determinative factor in the adverse employment decision." *Woodman,* 51 F.3d at 1092.

## B.

### *Plaintiffs' Prima Facie Case*

Defendants concede for purposes of the summary judgment motion that employee-plaintiff Mulero satisfies the first, third, and fourth prongs of the test. *See Woodman,* 51 F.3d at 1091. Defendants contest, however, plaintiffs' assertion that Mulero was meeting defendants' legitimate job expectations at the time of his discharge.

Plaintiffs muster scant evidence to counter defendants' contention. Cast in the light most favorable to plaintiffs, the substance of their argument on this point is as follows: Mulero worked at Ponte, Inc. for 29 years, starting as a company driver and working his way up the corporate ladder until he held the positions of General Manager and Director; as General Manager and Director, Mulero was "almost entirely responsible" for Ponte's successful day-to-day operations. Finally, plaintiffs claim that "defendants acknowledge that they believed Mr. Mulero's performance ... up until 1992 to be good."

■ Very scant evidence, indeed. The argument itself amounts to little more than a statement that Mulero actually performed the job; it says little about the quality of his performance. Perhaps unsurprisingly, then, the record is devoid of any affirmative indicia of satisfactory performance, such as evaluation reports or appraisals. The absence of this type of evidence may, of course, be attributable to defendants' failure to compile it; plaintiffs thus may not be condemned for a failure to produce it.

It is the evidence that plaintiffs do cite that nearly betrays their argument. Plaintiffs offer snippets of deposition testimony as support for a sanguine assessment of Mulero's performance. The deposition testimony is not, however, the solid undergirding plaintiffs believe it to be.

For example, plaintiffs assert that their claim that "defendants acknowledge that they believed Mr. Mulero's performance ... up until 1992 to be good" is supported by statements located at pages 32 and 78 of the deposition of María Luisa Ponte, an officer of Ponte, Inc. At page 32 of her deposition,

however, Ms. Ponte merely testified that prior to the period during which she worked at Ponte, Inc., her "personal impression" of Mulero was "a good one," and that prior to the death of her uncle, who worked at Ponte, her uncle "would complain about Mr. Mulero's brother [who worked at Ponte, Inc.], but not about Mr. Mulero." At page 78, she participated in the following exchange with plaintiffs' counsel:

> Q: In your estimation, prior to your starting [employment at Ponte, Inc.], was [Mulero] doing a good job with the inventory?
>
> A: I have no idea what type of job he was doing.
>
> Q: So you—
>
> A: I assumed he was doing a good job.
>
> Q: So prior to starting, you had no idea whether Mr. Mulero was doing a good or bad job with the inventory?
>
> A: I assume he was doing a good job.

Although it is conceivable that these portions of Ms. Ponte's testimony indirectly or obliquely reflect that defendants considered Mulero's performance prior to 1992 to be acceptable, I am hard-pressed to consider either statement a clear "acknowledge[ment]" of that opinion. Moreover, plaintiffs fail to offer evidence demonstrating the adequacy of Mulero's performance from late–1991, when Ms. Ponte began working at the company, to the date of Mulero's discharge, approximately one year later.

Nonetheless, Mulero's long history of employment at Ponte, Inc. included promotions and pay raises, factors that may serve to carry plaintiffs over the low hurdle of the prima facie case. *See Keisling v. SER–Jobs For Progress,* 19 F.3d 755, 760–61 (1st Cir. 1994); *Woodman,* 51 F.3d at 1091. Plaintiffs' failure to provide evidence extending to the date of Mulero's discharge does not require me to find that plaintiffs fail to satisfy this prong of the prima facie case. *See Keisling,* 19 F.3d at 760–61. I will assume, therefore, that plaintiffs have satisfied the four-part prima facie test and successfully animated a presumption of unlawful discriminatory action by defendants.

### C.
### *Defendants' Rebuttal*

Defendants, now tossed the ball, run quite a distance with it. They support with substantial deposition testimony and sworn statements a detailed description of the perceived deficits of Mulero's job performance that, they assert, caused Mulero's discharge from Ponte, Inc. Defendants allege that Mulero made poor hiring decisions; argued repeatedly with, threatened and vandalized the automobile belonging to, the company's accountant, Luis Caceiro; inadequately controlled inventory; permitted his children inappropriate access to the company's resources; and misallocated bonus payments. These arguments easily satisfy defendants' light burden of "articulating" a non-discriminatory reason for Mulero's discharge.

### D.
### *Plaintiffs' Demonstration of Pretext and Unlawful Animus*

#### 1.
#### *National Origin Discrimination*

Plaintiffs generate a great deal of heat in attempting to marshal evidence reflecting national origin-based discrimination, but do not shed much light in the process. Plaintiffs' protestations to the contrary notwithstanding, the only evidence arguably demonstrating that Mulero was the victim of national origin discrimination is Mulero's deposition testimony that Luis Caceiro, Ponte's accountant, commented to Mulero on several occasions that Mulero was the only Puerto Rican running a Cuban company and that Mulero should not have been permitted to do so.

Had the comment attributed to Caceiro been attributable to the defendants, it might have sufficed to satisfy the low threshold required to escape dismissal at this stage. There is no evidence, however, that Caceiro played any role in the decision to terminate Mulero. "The biases of one who neither makes nor influences the challenged personnel decision are not probative in an employment discrimination case." *Medina–Muñoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 10

686

(1st Cir.1990) (citations omitted). Ms. Ponte admittedly learned from Caceiro about Caceiro's conflicts with Mulero. Nonetheless, there is no evidence that Caceiro played any direct or indirect role in the decision to discharge Mulero.

Although not determinative of whether defendants discharged Mulero because Mulero is Puerto Rican, the Court need not ignore the length of Mulero's employment by Ponte and his unimpeded progression up the ranks within the company prior to his discharge. There is no evidence that defendants were unaware at any point during Mulero's 29-year tenure at Ponte, Inc. of Mulero's Puerto Rican birth and heritage. Nonetheless, defendants hired and promoted Mulero in a manner with which plaintiffs have aired no grievance.

The record does not include competent evidence reflecting the existence of national origin-related animus toward Mulero that affected the terms and conditions of his employment. Therefore, there is no genuine dispute as to any fact that would permit a jury reasonably to conclude that Mulero's discharge was motivated by his national origin.

### 2.

### Age Discrimination

█ Mulero alleges that María Luisa Ponte commented to Mulero in April 1992 that Mulero was "too old to handle" Ponte's salespeople, and that Mulero therefore was to be relieved of his supervisory duties over the sales force. This statement preceded by eight months Mulero's discharge and was followed during that period by no additional evidence of age-related bias. Ms. Ponte's single statement that Mulero was "too old" is simply too remote in time to be linked to the decision to fire Mulero. *Phelps v. Yale Sec., Inc.,* 986 F.2d 1020, 1025–26 (6th Cir.1993) (comment made nearly one year prior to discharge too remote to have influenced termination decision). *See also Guthrie v. Tifco Industries,* 941 F.2d 374, 379 (5th Cir.1991) ("vague" comments made at least one year prior to adverse employment action are "stray remarks which are insufficient to es-

tablish discrimination") (citation omitted). Plaintiffs cannot draw a sufficient nexus between a solitary comment that is so remote in time and the adverse employment decision. The statement is insufficient, standing alone—as it does on the present record—to demonstrate the existence of genuine issues of material fact with respect to whether Mulero's discharge was attributable to age-based animus.

### 3.

### Additional Allegations

█ Plaintiffs point to numerous instances of mistreatment and disparate treatment to which defendants allegedly subjected Mulero. These include diminishing Mulero's control over personnel matters, modifying the employee bonus system to reward merit rather than seniority, proposing to computerize Ponte, Inc.'s inventory system, and hiring a new supervisory employee. Plaintiffs also allege that defendants supported Luis Caceiro rather than Mulero with respect to the conflicts between the two men. Defendants' actions with respect to these matters may have bothered or inconvenienced Mulero, or run contrary to Mulero's vision of the company's proper course. Nonetheless, Mulero's duties were not appreciably restricted. His salary was not reduced. In general, the evidence reflects the existence of differences of opinion between Mulero and others at the company with respect to a wide variety of issues affecting the company. The merits and deficits of the parties' positions with respect to purely business-related issues may not be sorted out in an employment discrimination action. *See LeBlanc v. Great American Ins. Co.,* 6 F.3d 836, 846 (1st Cir.1993) ("It is not a court's role 'to second-guess the business decisions of an employer.'") (quoting *Petitti v. New England Tel. & Tel. Co.,* 909 F.2d 28, 31 (1st Cir.1990)).

█ Indeed, plaintiffs appear in their Motion in Opposition to concede that defendants' adverse employment decision was rooted in business-related disagreement over the company's direction. According to plaintiffs, "[t]he owners [of Ponte, Inc.], Ms. Sabines and Ms. Ponte, began to resent Mr. Mulero *because they thought,* even though

they had no supporting personal knowledge, *that Mr. Mulero was not managing Ponte properly.*" See Plaintiffs' Opposition at 5 (emphasis added). In the absence of evidence linking defendants' anger toward Mulero and the adverse employment action taken against him with age- or national origin-related bias, defendants may not be held liable for discharging an employee whose performance defendants believed to be unsatisfactory, even if other observers would find that performance to be satisfactory. *Woodman,* 51 F.3d at 1093 ("The factfinding inquiry into pretext focuses on whether the *employer believed* its stated reason to be credible.") (emphasis in original).

### 4.

### *Conclusion*

The evidence adduced by plaintiffs could not convince a trier of fact that defendants unlawfully discriminated on the basis of age or national origin. The circumstances of this case, based on the evidence of record, are not reasonably susceptible to an inference that defendants discharged Mulero because of unlawful discriminatory animus.

Even if accepted as true, plaintiffs' allegations do not represent or reflect, alone or together, evidence of age or national origin discrimination. The incidents and mistreatment, if true, happen to have been inflicted on a member of a protected class. This coincidence, however, does not suffice to meet plaintiffs' burden of raising the specter of unlawful discrimination.

### *IV.*

### *Conclusion*

Plaintiffs have labored mightily—perhaps excessively so, as defendants point out in their Reply—to scrape together evidence sufficient to sneak this case past the summary judgment stage. Facts and case law are cast imaginatively in exceptionally favorable light. Determination and creativity, however, cannot compensate for the dearth of substance revealed by a searching examination of plaintiffs' claims and the evidence of record. The record does not reflect that Mulero's age or national origin reasonably could be deemed

factors in defendants' decision to terminate his employment.

**THEREFORE,** defendants' Motion for Summary Judgment (**Dkt. 34**) is **GRANTED.** This case is **DISMISSED.** Judgment shall be entered accordingly.

**IT IS SO ORDERED.**