**Hideaki NAKAI, Plaintiff**

v.

**WICKES LUMBER COMPANY, Defendant.**

**Civ. No. 95–54–P–C.**

United States District Court, D. Maine.

Nov. 28, 1995.

Dennis Levandoski, Falmouth, Maine, for Plaintiff.

Louis B. Butterfield, Portland, Maine, Timothy W. Johnson, John R. Crenshaw, Crenshaw & Johnson, Atlanta, GA, for Defendant.

*MEMORANDUM AND ORDER GRANTING IN PART, AND DENYING IN PART, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*

GENE CARTER, Chief Judge.

Plaintiff Hideaki "Dick" Nakai, a former employee of Defendant Wickes Lumber Company ("Wickes Lumber"), brings this action alleging that Defendant discharged him in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. §§ 1981, 1981a (Count I); the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.* (Count II); and the Maine Human Rights Act, 5 M.R.S.A. § 4551 *et seq.* (Count III). Now pending is Defendant's Motion for Summary Judgment (Docket No. 8). For the following reasons, this Court will grant Defendant's motion as to Plaintiff's age discrimination claim and will deny it as to Plaintiff's race discrimination and retaliation claims.

## I. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Indeed, this Court must grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). "Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Munoz v. R.J. Reynolds*, 896 F.2d 5, 8 (1st Cir.1990). When deciding a motion for summary judgment, this Court considers the facts in the light most beneficial to the nonmovant, drawing all reasonable inferences in favor of Plaintiff. *Smith v. Stratus Computer, Inc.*, 40 F.3d 11, 12 (1st Cir.1994).

## II. MATERIAL FACTS

Plaintiff Nakai was born of Japanese ancestry in 1943 in Arizona. Complaint (Docket No. 1) ¶¶ 5–6. He worked for Defendant Wickes Lumber from January 1972 until October 1993. Affidavit of Hideaki Nakai (Docket No. 16) ¶ 1. The last eleven of these nearly twenty-two years were spent as the manager of Defendant's Portland, Maine store. Nakai Aff. ¶ 1. During Nakai's ten-

ure with Wickes Lumber, he garnered several commendations, including Five-, Ten-, Fifteen-, and Twenty–Year Service Awards; Top Managers Program in 1980, 1981, and 1984–89; and "Vice President's Maine [sic] of the Year in 1984." Affidavit of Dennis Levandoski Exhibit C (Docket No. 15) at 2. Moreover, in February or March of each year from 1984 through 1993, Nakai received a performance appraisal for the preceding year. From February 1984 through February 1991, Nakai was rated "Highly Satisfactory," the highest possible rating. Nakai Aff. ¶ 6.

Sometime in early 1992, Charles E. "Chuck" Price, Jr., became Nakai's supervisor. At around the same time, the Portland store of Wickes Lumber began to perform worse than most but not all other stores, both nationwide and in the region. Levandoski Aff.Ex. C; Nakai Aff. ¶ 3. *See* Plaintiff's Objection to Defendant's Motion for Summary Judgment and Supporting Memorandum (Docket No. 13) at 1. When Price gave Nakai his annual performance appraisals in early 1992 and 1993, Nakai's rating dropped to merely "Satisfactory." Nakai Aff. ¶ 6. In March of 1993, Price told Nakai that he was approaching a "crossroads" in his career. Levandoski Aff. Ex. D.

On May 21, 1993, Price sent Nakai a strongly worded memo ("May Memo") expressing disappointment with Nakai for allowing a "breach in credit and administrative procedures." Affidavit of Richard Bradford (Docket No. 11) Attachment B. The May Memo specifically enumerates the effects of this breach: $80,585 of bad debt at the Portland store through the first four months of 1993, as well as $200,000 of potential exposure to additional bad debt. Bradford Aff.

Att. B. The May Memo specifically instructs Nakai on how best to remedy the breach: arrange meetings between large debtors and the credit department by May 28 and then, based on those meetings, develop a "specific, time phased (90 days max.)" action plan designed to maximize collections and minimize losses.[1] Bradford Aff.Att. B. In addition, Price expresses his intention to develop with Nakai a "strategic plan" "for leading the pro sales efforts at [the Portland] center." Bradford Aff.Att. B. Price concludes his directives by admonishing that "[f]uture violations, or failure to implement above corrective actions, will lead to further disciplinary action, which could include discharge." Bradford Aff.Att. B.

Also in late May 1993, James Klopp, manager of another Wickes Lumber store in Maine, reported to Nakai that Price had called Nakai a "slant-eyed son of a bitch." Bradford Aff. ¶ 6–7.[2] Nakai responded on May 27 by informing Wickes Lumber's Human Resources Department of the comment. Levandoski Aff.Ex. D. On June 4, Nakai was contacted by a Wickes Lumber vice-president, who told him the allegation was taken seriously and promised to inform him of the results. Levandoski Aff.Ex. D. Nakai met with Price and Bradford, Area Vice–President of Wickes Lumber, on June 9 to discuss the incident. Bradford Aff. ¶ 9. Although Price denied making the remark, he nevertheless got "in trouble" in the form of receiving "strong counsel" from Bradford. Levandoski Aff. ¶ 10; Bradford Aff. ¶ 8. On or about June 10, Price and Nakai met and formulated an "action plan" ("June Action Plan") requiring Nakai to perform specific managerial tasks and achieve specific performance goals.[3] Bradford Aff. ¶ 10.

1. The record does not reveal that Nakai subsequently implemented these particular remedial measures. Nakai instead alleges, but submits no proof, that these and other requirements of his employer were unreasonable.

2. Defendant has produced evidence adequate for the purposes of this motion that Klopp recalled hearing Price's remark. Well after this motion was taken under advisement, however, Defendant submitted a Motion *In Limine* (Docket No. 26) contesting the competence of this evidence for trial. This Court will not consider that issue

here, as the evidentiary record for the purposes of this motion has long since closed.

3. Neither party has submitted to this Court the actual June Action Plan. *The document that Defendant has produced and referred to as the June Action Plan is, in fact, the "Action Plan Results—thru [sic] Period 9" ("September Results"). See Bradford Aff.Att. A at 1. Plaintiff, however, not only does not dispute the existence, date, or contents of the June Action Plan, but, like Defendant, refers to the September Results as the June Action Plan itself. E.g., Material Facts in Dispute (Docket No. 14) ¶ 5; Levandoski*

On July 29, Price issued to Nakai the first "Mid–Year Performance Appraisal" Nakai had ever received ("July Evaluation"). Bradford Aff.Att. C at 1; Nakai Aff. ¶ 2. Nakai was rated in five categories: sales management, margin control, expense control, inventory control, and credit. Bradford Aff.Att. C. On a scale of one to five, the weighted average of his scores in these categories was 1.4. Bradford Aff.Att. C at 7. Price supported his scoring for all five categories by specifically comparing actual with budgeted store performance figures, and by elaborating on that comparison with comments. Although Nakai now characterizes this evaluation as "very unfair" (Levandoski Aff.Ex. D), he neither contests the accuracy of the specific actual or budgeted performance figures nor adduces any evidence that the budgeted figures, though accurate, constitute unattainably high expectations. In concluding the July Evaluation, Price placed Nakai on probation, noting that if Nakai did not "meet the revised goals, or implement the [prescribed action] plans [by the end of September], he could face termination." Bradford Aff.Att. C at 7.

Sometime after September 8, Price issued another evaluation[4] of Nakai's job performance in a document entitled "Action Plan Results—thru [sic] Period 9" ("September Results"). Bradford Aff.Att. A. at 1. Now analyzing Nakai's work in terms of three main categories, sales, margins, and expenses, Price once again compares actual store performance with the specific goals set forth in June. Even though Nakai met goals in some areas, Price cited deficiencies in others in concluding that "Dick [Nakai] has not met the terms of his probation." Bradford Aff.Att. A at 4. Once again, Nakai neither contests the existence of the substantial discrepancy reported in the September Results between projected goals and actual performance, nor offers any proof to support his claim that those goals are somehow unreasonably high. More specifically, Nakai does not dispute that even though the June Action Plan required him to develop on a timely basis a formal contractor sales plan for his sales representatives, to require his sales representatives to make 20 phone calls each week to solicit business, and to adhere strictly to company credit policies, he failed to do so.

Dick Nakai was fired on October 14, 1993, and filed a complaint with the Maine Human Rights Commission and the United States Equal Employment Opportunity Commission on October 20, 1993. No other store managers in Price's zone were fired. Nakai Aff. ¶ 5. Defendant has produced no evidence of action plans or mid-year evaluations given to other store managers in Price's zone. Nakai Aff. ¶ 5; Levandoski Aff. ¶ 8. All other store managers in Price's zone were Caucasian. Nakai Aff. ¶ 7.

## III. DISCUSSION

▮ Nakai essentially makes three claims regarding his discharge, that it was: (1) based on his age in violation of the ADEA (Count II); (2) based on his race in violation of Title VII (Count I); and (3) in retaliation for reporting Price's racially biased remark in violation of Title VII (Count I).[5] Plaintiff

Aff. ¶ 3; Bradford Aff. ¶ 10. Because both parties rely on and do not contest these facts, and because the September Results enumerate the specific requirements of the June Action Plan before describing Nakai's degree of compliance with them, we will assume for the purposes of this motion that the September Results reflect completely and accurately the requirements of the June Action Plan.

4. Although this document is not dated (nor signed, nor formally addressed to any person or legal entity), the latest specific past date to which it refers unequivocally is September 8. Bradford Aff.Att. A at 4. (Unidentified pen markings cross out "October" 7 and write in "Sept" 7 as the date of another past event. Bradford Aff.Att. A at

4.) The document also refers to results "[a]s of the end of the 9th period," apparently referring to September. Bradford Aff.Att. A at 3.

5. In Count III, Plaintiff also seeks relief under the Maine Human Rights Act, 5 M.R.S.A. § 4551 *et seq.*, for the same conduct alleged to constitute violations of the federal laws enumerated in Counts I and II. The Maine Law Court has explained, however, that it looks to federal case law to interpret the Maine Human Rights Act, and has specifically adopted the *McDonnell Douglas* order of proof for analyzing claims under that Act. *Maine Human Rights Comm'n v. City of Auburn*, 408 A.2d 1253, 1261 (Me.1979). Similarly, Defendant's liability for damages under 42 U.S.C. § 1981, alleged as a part of Count

bears the burden of *persuasion* at all times for all three claims. *See St. Mary's Honor Center v. Hicks,* —— U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Because Plaintiff lacks direct evidence of the various unlawful motivations alleged, however, the burden of *production* for all those claims shifts in accordance with the three-step order of proof established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1972). *See Sanchez v. Puerto Rico Oil Co.,* 37 F.3d 712 (1st Cir.1994) (applying *McDonnell Douglas* to claims of age-based discriminatory discharge under the ADEA); *Rowlett v. Anheuser–Busch, Inc.,* 832 F.2d 194 (1st Cir.1987) (applying *McDonnell Douglas* to claims of race-based discriminatory and retaliatory discharge under Title VII and section 1981). In the first *McDonnell Douglas* phase, Plaintiff must produce evidence sufficient to make out a prima facie case, thus giving rise to a presumption that Defendant unlawfully discriminated or retaliated against Plaintiff in discharging him. *Hicks,* —— U.S. at —— ——, 113 S.Ct. at 2746–47. Second, Defendant must rebut this presumption by producing evidence that the discharge was motivated instead by a legitimate, nondiscriminatory reason. *Id.* at ——, 113 S.Ct. at 2747. Finally, to avoid summary judgment, Plaintiff must respond with evidence that would allow a reasonable jury to make two findings: (1) that the employer's articulated reason is a pretext, and (2) that the true reason is discriminatory. *Smith v. Stratus Computer, Inc.,* 40 F.3d 11, 16 (1st Cir.1994). Although the same general burden-shifting framework applies to all three claims, they differ enough to warrant the separate treatment of each in turn.

## A. Age Discrimination Under The ADEA

### 1. Prima Facie Case

■ The First Circuit has recently articulated the standard for establishing a prima facie case of wrongful termination of employment under the ADEA. Plaintiff must

> adduc[e] evidence that (i) he is a member of the protected class, *i.e.,* over 40 years old, (ii) the quality of his work met the employer's legitimate expectations, (iii) the employer nevertheless cashiered him, and (iv) the employer sought a replacement with roughly equivalent occupational qualifications, thereby demonstrating a continuing need for the same services and skills.

*Sanchez v. Puerto Rico Oil Co.,* 37 F.3d 712, 719 (1st Cir.1994). Although Plaintiff must satisfy all four elements, it is commonly emphasized that this task is "not onerous." *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981); *Smith v. Stratus Computer, Inc.,* 40 F.3d 11, 15 n. 4 (1st Cir.1994).

■ In this case, we find that Plaintiff has succeeded in making out a prima facie case of age discrimination. It is undisputed that Plaintiff is over forty, that Defendant fired him as manager of the Portland store, and that Defendant has since sought someone comparably qualified to manage the store. It is vigorously disputed, however, whether Plaintiff has offered evidence sufficient for a reasonable jury to conclude that "the quality of his work met the employer's legitimate expectations." Defendant claims that Plaintiff's failure to contest Defendant's specific evidence of Plaintiff's deficient job performance in 1993 is fatal to Plaintiff's prima facie case. *See Escobar v. Office of Disabled Persons Investigating Official,* 797 F.Supp. 70, 75 (D.P.R.1992) (finding no prima facie case when plaintiff failed to contest employer's evidence of specific job-performance deficiencies). Specifically, Nakai does not contest: the May Memo's charge that he allowed breaches in credit policies, resulting in thousands of dollars of bad debt; the July Evaluation's account of the substantial disparity between the actual and budgeted performance figures for the Portland store; the September Results' charge of particular

---

I, is determined according to the same structure of proof as for equitable remedies under Title VII. *See Rowlett v. Anheuser–Busch, Inc.,* 832 F.2d 194, 201 (1st Cir.1987) (applying same *McDonnell Douglas* analysis to same evidence of intentional discrimination alleged under both Title VII and § 1981). The following analysis, then, effectively assesses the viability not only of Plaintiff's three main claims listed above, but also of the two related claims noted here.

managerial deficiencies, including failure timely to create a contractor sales plan, failure to require sales representatives to make twenty sales calls each week, and persistent failure to comply fully with credit policies; and that Nakai participated in formulating the June Action Plan that defined the standard against which he was evaluated in the July Evaluation and September Results. Nevertheless, Plaintiff has produced evidence of twenty-two years of employment with Wickes Lumber, including a promotion to manager; nine years of optimal (and two years of adequate) performance evaluations in that position; and numerous commendations from Wickes Lumber, both before and after his promotion to manager.

In several recent cases, the First Circuit has found the "legitimate job-performance expectation" element of the prima facie case satisfied when a plaintiff demonstrates a long history of experience in the industry or employment with a defendant, including largely favorable performance reviews, promotions, and ordinary pay raises. *E.g., Woodman v. Haemonetics Corp.,* 51 F.3d 1087, 1092 (1st Cir.1995) (citing *Woods v. Friction Materials, Inc.,* 30 F.3d 255, 261 (1st Cir.1994)). A plaintiff clears the low prima facie hurdle with such a showing even when failing to provide evidence of adequate job performance extending up to the date of discharge. *Smith v. Stratus Computer, Inc.,* 40 F.3d 11, 15 n. 4 (1st Cir.1994) (citing *Keisling v. SER–Jobs for Progress,* 19 F.3d 755, 760 (1st Cir.1994)). *See Mulero Rodriguez v. Ponte, Inc.,* 891 F.Supp. 680, 684–85 (D.P.R.1995) (assuming prima facie case based on the "[v]ery scant evidence" of plaintiff's long history of adequate job performance until one year before discharge, notwithstanding defendant's otherwise uncontradicted evidence of specific job performance deficiencies at the time of discharge). Because the evidentiary showings in these cases so nearly match Nakai's showing, this Court finds Plaintiff to have generated a genuine issue of material fact as to whether "the quality of his work met the employer's legitimate expectations."

Plaintiff's prima facie case thus survives Defendant's motion for summary judgment.

### 2. Legitimate, Nondiscriminatory Reason

 Once Plaintiff has met his initial burden of production, that burden shifts to Defendant to articulate a legitimate, nondiscriminatory reason for having discharged Nakai. Defendant meets its burden by producing substantial evidence, namely the contents of the May Memo, July Evaluation, and September Results detailed above, that Nakai was fired because his job performance had dropped to an unacceptably low level during 1993. Defendant thereby succeeds in dissolving the presumption of discrimination established by Plaintiff's prima facie case.

### 3. Pretext for Age Discrimination

 The burden now shifts back to Plaintiff, who must respond with evidence sufficient for a reasonable jury to find: (1) that the employer's articulated reason is a pretext, and (2) that the true reason is age discrimination. *Medina–Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 9 (1st Cir.1990). *See Smith v. Stratus Computer, Inc.,* 40 F.3d 11, 16 (1st Cir.1994).

#### a. Pretext

Plaintiff has supplied enough evidence to put into play the question of pretext, of whether Defendant's proffered reason is not the true reason.[6] Nakai claims that a reasonable jury could make such a finding because the proffered reason of poor job performance did not also impel Price to treat as severely similarly situated managers, those in other area stores whose performance was comparable to that of Plaintiff. *See Smith,* 40 F.3d at 16–17. For evidentiary support of this claim, Nakai points both to various store performance data indicating that his store was not the worst and to Defendant's failure to produce any other "action plans," "mid-year performance appraisals," or discharges issued by Price against any other store manager in his zone. Moreover, the conspicuous

---

**6.** The basis of Plaintiff's pretext claim apparently is *not* that Defendant misstates the fact that Nakai's store had its shortcomings; instead, it is that Defendant misstates the fact that these (seemingly admitted) shortcomings were the true grounds for his discharge, rather than convenient excuses invoked in the aid of discharging him on other, impermissible grounds.

irregularity and lack of formality of Price's July Evaluation and September Results would allow a reasonable jury to infer, at least, that Price did not evaluate Nakai based on a uniformly applied performance standard and, at most, that Price evaluated Nakai based on a higher standard created specifically for him. Therefore, Plaintiff's evidence passes muster on this issue.

### b. Age-based Discriminatory Animus

Plaintiff fails, however, to generate an issue of fact regarding whether his *age* was the *real reason* for his discharge. Nakai offers as his only evidence[7] of age-based discriminatory animus Price's comment that Nakai's career was at a "crossroads." This remark is so ambiguous, so lacking in age-related character, particularly standing alone, that it has little or no probative value regarding the question of age discrimination. *See Smith,* 40 F.3d at 18. Nakai's age discrimination claim, therefore, fails.

### B. Race Discrimination Under Title VII

■ The structure of proof for demonstrating discriminatory discharge under Title VII differs from the analogous structure under the ADEA in only two respects: (1) at the prima facie case stage, the relevant protected class is race rather than age, and (2) at the pretext stage, the relevant discriminatory animus is race- rather than age-based. *See Williams v. Frank,* 757 F.Supp. 112, 116 (D.Mass.1991), *aff'd,* 959 F.2d 230 (1st Cir. 1992). An individual of Japanese descent, Plaintiff Nakai is a member of the relevant protected class. As described above, Plaintiff has met the remaining requirements of the prima facie case, Defendant has met its subsequent burden to articulate a legitimate, nondiscriminatory reason, and Plaintiff has responded with adequate evidence of pretext.

*See supra* Sections A.1., A.2., and A.3.a. Where Plaintiff failed above to generate sufficient evidence of age-based discriminatory animus, however, Plaintiff succeeds here in generating sufficient evidence of race-based discriminatory animus. A jury may reasonably conclude that Price fired Nakai on account of his race based on evidence of Price's alleged "slant-eyed son of a bitch" remark and inferences to be drawn from it and on evidence that all other store managers in the area, none of whom were fired despite similarly low store performance, were Caucasian. Therefore, Plaintiff may go forward to trial with his claim of racial discrimination under Title VII.

### C. Retaliation Under Title VII

■ In order to make a prima facie case of retaliatory discharge under Title VII,[8] the Court of Appeals for the First Circuit requires a plaintiff to demonstrate: (1) protected participation or opposition under Title VII known by the alleged retaliator;[9] (2) an employment action disadvantaging those engaged in protected activities; (3) a causal connection between the first two elements, that is, a retaliatory motive playing a part in the adverse employment action. *Petitti v. New England Tel. & Tel. Co.,* 909 F.2d 28, 33 (1st Cir.1990). Evidence of proximity in time between the protected activity and the adverse employment action is among the most common forms of proof of retaliatory motive, at both the prima facie case and pretext of retaliation stages of the *McDonnell Douglas* sequence. *See Hochstadt v. Worcester Foundation for Experimental Biology, Inc.,* 425 F.Supp. 318, 324 (D.Mass.), *aff'd,* 545 F.2d 222 (1st Cir.1976) (timing as evidence of motive at prima facie case stage); *Petitti v. Commonwealth of Massachusetts Department of Mental Health,* 859 F.Supp.

7. Conspicuously absent from Plaintiff's evidence is the age of the managers of other struggling stores in the area who were not fired.

8. Title VII retaliatory discharge claims are based on 42 U.S.C. § 2000e–3(a), which states:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has

made a charge, testified, assisted or participated in any manner in an investigation, proceeding or hearing under this subchapter.

9. Plaintiffs need not oppose an actual Title VII violation in order to succeed in a retaliation claim; instead, they need only have a reasonable belief that such a violation has occurred. *Petitti v. New England Tel. & Tel. Co.,* 909 F.2d 28, 33 (1st Cir.1990).

33, 40 (D.Mass.1993) (timing as evidence of motive at pretext of retaliation stage).

 Plaintiff in this case submits evidence sufficient for a jury to find that he meets the three requirements of a prima facie case of retaliation. First, Nakai complained to Bradford about Price's remark and met with Bradford and Price to discuss it, resulting in Price's getting "in trouble" with Bradford. Second, Price placed Nakai on an action plan, issued two strongly negative evaluations of Nakai citing his failure to meet all the requirements of that plan, and eventually fired Nakai. Third, the close proximity in time of the protected activity and adverse employment actions may be taken to suggest retaliation: on June 9, Nakai, Bradford, and Price met to discuss Price's remark; on or about June 10, the June Action Plan was formulated, establishing the performance standard according to which Nakai was evaluated and later discharged on October 14. Plaintiff therefore makes out a prima facie case of retaliatory discharge.

Once again, the burden shifts back to Defendant, whose evidence of a legitimate, nondiscriminatory reason for discharging Nakai, outlined in Section A.2., dissolves the presumption of retaliation established by Plaintiff's prima facie case. Similarly, Plaintiff's evidence of pretext suffices here as in his first two claims, see Section A.3.a., leaving Plaintiff with only the requirement of evidence of retaliatory motive. Plaintiff's evidence that the four-month sequence of events (June Action Plan, July Evaluation, and September Results) culminating in Nakai's October 14 discharge began within a day or two after Nakai's bringing Price to discipline for his alleged racist remark would permit a reasonable jury to find Price to have discharged Nakai for his protected activity in reporting the remark. Therefore, Plaintiff's Title VII retaliation claim survives summary judgment.

## IV. CONCLUSION

Accordingly, it is ORDERED that Defendant's Motion for Summary Judgment be, and it is hereby, *GRANTED* as to the age discrimination claim set out in Count II, and it is *DENIED* as to the race discrimination claim set out in Count I and the retaliation claim also set out in Count I. It is further *ORDERED* that Defendant's Motion for Summary Judgment on Count III be, and it is hereby, *GRANTED*, in part, as to the age discrimination claim asserted under Maine Law, and it is *DENIED*, in part, as to the race discrimination and retaliation claims asserted under Maine Law.