Richard THORNDIKE, Plaintiff,

v.

KMART CORPORATION, Defendant.

No. CIV. 98–CV–94–B.

United States District Court,
D. Maine.

Jan. 8, 1999.

Joseph M. Jabar, Daviau, Jabar & Batten, Waterville, ME, for Plaintiff.

Richad G. Moon, Melinda J. Caterine, Moon, Moss, McGill & Bachelder, Portland, ME, for Defendant.

## ORDER AND MEMORANDUM OF DECISION

BRODY, District Judge.

In this civil rights action, Plaintiff Richard Thorndike ("Plaintiff") alleges that Defendant Kmart Corporation ("Defendant") discriminated against him on the basis of age by failing to transfer him to another store in the course of a reduction-in-force. Plaintiff brings this one-count diversity action under the Maine Human Rights Act ("MHRA"), Me.Rev.Stat. Ann. tit. 5, § 4551 *et seq.* Before the Court is Defendant's Motion for Summary Judgment. For the reasons stated below, Defendant's Motion is GRANTED.

## I. SUMMARY JUDGMENT

Summary judgment is appropriate in the absence of a genuine issue as to any material fact and when the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). An issue is genuine for these purposes if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A material fact is one that has "the potential to affect the outcome of the suit under the applicable law." *Nereida–Gonzalez v. Tirado–Delgado*, 990 F.2d 701, 703 (1st Cir.1993). Facts may be drawn from "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits." Fed.R.Civ.P. 56(c). For the purposes of summary judgment the Court views the record in the light most favorable to the nonmoving party. *See McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir.1995).

## II. FACTS

On August 14, 1972, Plaintiff began working as an associate at Defendant's Falmouth store. A few years later, Plaintiff was promoted to the position of resident manager. A resident manager is a managerial employee who is not automatically transferable. As a resident manager, Plaintiff could not be transferred unless he specifically asked for a transfer and a job was available or Defendant asked him to transfer and he agreed. In contrast, a corporate manager could be transferred anywhere at any time, without his consent, at the will of Defendant. Decisions regarding transfers of corporate managers were made at Defendant's corporate headquarters.

In 1979, Plaintiff requested a lateral transfer to Defendant's Skowhegan store, and Defendant granted this request. In February 1996, Plaintiff learned that Defendant was closing the Skowhegan store. At that time, Plaintiff was 64 years old and was qualified to work for Defendant as a hard lines/operations manager.[1] Plaintiff asked Klaus Woodward ("Woodward"), Defendant's district manager for Maine and southern New Hampshire, if there were any openings available to him in another of Defendant's stores.[2]

---

[1]. While Plaintiff was both a resident manager and a hard lines/operations manager, these titles do not reflect separate job responsibilities. Plaintiff's status as a resident manager controlled his transferability, as discussed above, while his status as a hard lines/operations manager defined his actual job duties.

[2]. It is unclear whether, during this conversation, Plaintiff expressed interest in positions located solely within Woodward's geographic district, or in positions outside that district as well. However, it is undisputed that Woodward served as district manager solely for the Maine and southern New Hampshire region. While Plaintiff speculates that Woodward had additional authority to facilitate transfers outside of his district, he offers no evidence to support that claim:

Q. Now what district was Klaus Woodward responsible for?
A. Maine.

Woodward told Plaintiff that there were no openings for a hard lines/operations manager in his district at that time. Plaintiff himself was not aware of openings for hard lines/operations managers in Woodward's district or any other district at that time.

Between February 1996 and the date the Skowhegan store closed, only two Skowhegan store employees transferred to other locations. In March 1996, Sheldon Benowitz ("Benowitz"), the 44 year-old store manager, transferred outside the district to a store in Poughkeepsie, New York. Benowitz was a corporate manager who could be transferred anywhere at any time. Also in March 1996, Anne Bryant ("Bryant"), a 35–year old resident soft lines manager, transferred to Defendant's Claremont, New Hampshire store in her same position. Bryant was informed of the lateral opening in February 1996, expressed interest in the position, and was hired. During the same time period, there were no openings for hard lines or operations managers in the Maine and southern New Hampshire district.

Defendant terminated Plaintiff on May 15, 1996, when the Skowhegan store closed. No Skowhegan employees were offered transfers at the time of the store closing. Although some employees relocated to the Waterville store, they all did so after reapplying for positions at that store. Plaintiff did not apply for any other positions with Defendant. He applied for and received pension benefits.

> Q. So did Klaus Woodward have any responsibility for what happened outside of the district?
> A. Well, I think he had whatever you want to call it. He knew the other district managers and I imagine he had some say, some input into it, if he, you know—
> Q. But the other districts were not his responsibility?
> A. No. I think he had a couple of stores in New Hampshire besides all of the Maine stores.
> (Thorndike Dep. at 55.)

3. Plaintiff suggests, without citation to supporting case law, that "[t]his is not a true reduction of force case because K–Mart was not engaged in an attempt to reduce its employees, it was simply closing one of its many stores." (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 3–4.) The Court does not find the logic of this argument persuasive.

## III. DISCUSSION

■ Plaintiff claims that Defendant discriminated against him on the basis of age in violation of the age discrimination provisions of the Maine Human Rights Act ("MHRA"), Me.Rev.Stat. Ann. tit. 5, § 4551 *et seq.*, when it transferred and spared from termination two younger employees, Benowitz and Bryant, but failed to offer Plaintiff the same opportunity.

■ While Plaintiff's claim is grounded in the Maine Human Rights Act, the Court will utilize the legal framework applicable to the parallel federal statute, the Age Discrimination in Employment Act ("ADEA"). *See Soileau v. Guilford of Maine, Inc.*, 928 F.Supp. 37, 45 (D.Me.1996), *aff'd* 105 F.3d 12 (1st Cir.1997); *Nakai v. Wickes Lumber Co.*, 906 F.Supp. 698, 703 n. 5 (D.Me.1995); *Weeks v. State of Maine*, 866 F.Supp. 601, 603 n. 2 (D.Me.1994). Absent direct evidence of discriminatory intent, a plaintiff alleging age discrimination under the ADEA may present circumstantial evidence according to the three-stage *McDonnell–Douglas* burden-shifting scheme. *See Shorette v. Rite Aid of Maine, Inc.*, 155 F.3d 8, 12 (1st Cir.1998). Specific reduction-in-force analysis is appropriate in a case like this one, where the plaintiff's position was eliminated and the plaintiff was not replaced after his termination.[3] *See Solt v. Alpo Petfoods, Inc.*, 837 F.Supp. 681, 685 (E.D.Pa.1993), *aff'd* 30 F.3d 1488 (3rd Cir.1994).

Furthermore, even if the Court were to characterize this as a "failure to transfer" claim, as Plaintiff requests, (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 7), Plaintiff's case certainly would fail at the prima facie stage. In the failure to transfer context, a prima facie showing of age discrimination requires that: (i) the plaintiff was a member of the protected age group, (ii) the plaintiff applied for a transfer but was not selected for that particular position, (iii) the plaintiff was qualified for the transfer position he sought, (iv) another person with similar qualifications outside the protected age group was selected for the position. *See Whitten v. Farmland Indus., Inc.*, 759 F.Supp. 1522, 1537 (D.Kan.1991). Here, since Plaintiff cannot point to the existence of a particular position for which he applied, or to another person who was selected for such a position, a claim under this theory would fail as a matter of law.

To make out a prima facie case of discrimination in a reduction-in-force case, a plaintiff must demonstrate that (i) he was a member of a protected class, such as persons at least forty years of age; (ii) he satisfied his employer's legitimate job performance expectations; (iii) he was laid off or terminated; and (iv) his employer did not treat similarly situated members of the protected class neutrally, or retained persons outside the protected class in the same position. *See Thomas v. Eastman Kodak Co.,* 18 F.Supp.2d 129, 135 (D.Mass.1998). Once established, the prima facie case raises a presumption that the employer was motivated by discriminatory animus. *See Shorette,* 155 F.3d at 12. The burden of production then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment decision. *See id.* After the employer satisfies its burden, the presumption of discrimination dissipates and the plaintiff must prove both (i) that the employer's articulated reason was false and pretextual, and (ii) that the employer's real motivation was the plaintiff's age. *See id.* at 12–13.

Defendant does not focus on whether Plaintiff has established a prima facie case of age discrimination.[4] Rather, Defendant argues that it is entitled to summary judgment because Plaintiff cannot show that Defendant's explanation for its failure to provide him with alternative employment—the absence of hard lines or operations manager openings between February 1996 and the date of the store closing—is in fact pretext for age discrimination. Defendant observes that Plaintiff has not offered any evidence indicating that hard lines or operations manager positions in fact were available at that time, nor any evidence indicating that Defendant was motivated by age-based animus.

Plaintiff nonetheless contends that sufficient questions of pretext exist to bar summary judgment. Plaintiff focuses on the fact that two younger managers at the Skowhegan store, Benowitz and Bryant, were transferred, while Plaintiff was not. Plaintiff does not claim that he was qualified for either of the positions to which Benowitz and Bryant were transferred. Rather, Plaintiff notes that Defendant somehow "informed" Bryant of the transfer opportunity—in other words, she did not have to make a request—and asserts that "[i]n [her] case the company went out of the way to provide alternative employment for her." (Pl.['s] Resp. to Def.['s] Mot. for Summ. J. at 3.) Plaintiff argues that Defendant made substantial efforts to effectuate transfers for the two younger managers, but made no such efforts for him, and that these circumstances permit an inference of intentional discrimination.

To avert summary judgment on the issue of pretext, a plaintiff must present evidence "of such strength and quality as to permit a reasonable finding that the ... [adverse employment action] was obviously or manifestly unsupported." *Ruiz v. Posadas de San Juan Associates,* 124 F.3d 243, 248 (1st Cir.1997) (quoting *Brown v. Trustees of Boston Univ.,* 891 F.2d 337, 346 (1st Cir. 1989)) (internal quotation marks omitted); *see also Villanueva v. Wellesley College,* 930 F.2d 124, 127 (1st Cir.1991) ("The plaintiff must do more than cast doubt on the wisdom of the employer's justification; to defeat summary judgment, the plaintiff must introduce evidence that the real reason for the employer's action was discrimination."). Plaintiff has not presented any evidence indicating that Defendant's articulated legitimate, nondiscriminatory reason for its failure

4. While a plaintiff's burden at the prima facie stage is "not onerous," *see Nakai v. Wickes Lumber Co.,* 906 F.Supp. 698, 703 (D.Me.1995) (quoting *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)), Plaintiff's satisfaction of this burden in this case is far from clear. Plaintiff certainly has satisfied the first three elements: Plaintiff was a member of the protected age group at the relevant time; it is undisputed that Plaintiff met the performance expectations of Defendant; and Plaintiff was terminated rather than transferred. The fourth element, however, is more complicated. Plaintiff presents this as a case in which, when faced with a store closing, his employer decided to transfer two younger managers and to terminate an older manager. Under this scenario, Plaintiff, Benowitz, and Bryant were all similarly situated employees because each was a manager at the Skowhegan store. Defendant, however, argues in its Reply memorandum that these three managers in fact were not similarly situated because Benowitz was a corporate manager subject to different transfer guidelines than those applicable to Plaintiff, and Bryant, although a resident manager like Plaintiff, was a soft lines manager who transferred to an available soft lines manager job.

to transfer Plaintiff is false[5] or that Defendant's true motivation was age-based animus. There is simply no evidence that any hard lines or operations manager positions were open during the relevant time period. Defendant's treatment of the younger managers is largely irrelevant in the absence of evidence that a job for which Plaintiff was qualified was available. Furthermore, Plaintiff has not pointed to any evidence of age-based discriminatory animus on Defendant's part. In sum, Plaintiff has failed to raise a genuine issue of material fact as to Defendant's intent when it failed to transfer Plaintiff, and therefore summary judgment in favor of Defendant is appropriate.

## IV. CONCLUSION

For the reasons discussed above, Defendant's Motion for Summary Judgment on all Counts of Plaintiff's Complaint is GRANTED.

*SO ORDERED.*

---

**5.** In Plaintiff's Response to Defendant's Motion for Summary Judgment, Plaintiff states that "[t]here are certain parts of the facts set out in the Defendant's Relevant Factual Background which the Plaintiff does not agree with." (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 1.) However, Plaintiff then proceeds to contest portions of Woodward's deposition testimony which do not form the factual basis of Defendant's Motion for Summary Judgment. In fact, the majority of Plaintiff's Response merely disputes Woodward's deposition testimony that Plaintiff said he did not want to continue to work for Defendant and that Woodward offered Plaintiff a chance to apply for the corporate management program. Given that Defendant has cited the absence of available hard lines or operations manager positions as the justification for its failure to transfer Plaintiff, these asserted factual disputes regarding Plaintiff's employment intentions do not raise a genuine issue of *material* fact and therefore they are irrelevant to the Court's disposition of this Motion.