Peter W. SHORETTE, Sr.,
Plaintiff, Appellant,

v.

RITE AID OF MAINE, INC.,
Defendant, Appellee.

No. 98–1005.

United States Court of Appeals,
First Circuit.

Heard July 29, 1998.

Decided Sept. 15, 1998.

Arthur J. Greif, with whom Charles E. Gilbert III and Gilbert Law Offices, P.A. were on brief for appellant.

Anne M. Carney, with whom Jonathan W. Brogan and Norman, Hanson & DeTroy were on brief for appellee.

Before TORRUELLA, Chief Judge, CYR, Senior Circuit Judge, and STAHL, Circuit Judge.

CYR, Senior Circuit Judge.

Peter W. Shorette, Sr., appeals from the district court judgment which dismissed his age discrimination claim against his former employer, Rite Aid of Maine, Inc. ("Rite Aid"). We affirm.

# I

## BACKGROUND

For nearly thirty years Shorette worked as a store manager for LaVerdiere Drug Stores ("LaVerdiere"). In 1994, Rite Aid, a LaVerdiere competitor, constructed a new store across the street from the LaVerdiere store which Shorette managed in Fairfield, Maine. Later that year Rite Aid acquired LaVerdiere, and converted all seventy-four LaVerdiere stores into Rite Aid stores. Shorette, then 60 years of age, was receiving an annual salary of $31,000 at the time, whereas Rite Aid store managers received roughly $25,000. Unlike LaVerdiere store managers, moreover, all Rite Aid store managers were provided in-store computer systems with which to perform various managerial functions, such as inventory and payroll. After the LaVerdiere takeover, Rite Aid advised all former LaVerdiere managers that it would retain them as managers, and train them on the Rite Aid computer system. Since the Fairfield store which Shorette managed was next door to the newly constructed Rite Aid store, and therefore redundant, it was slated for closure. Before the Fairfield store closed, however, Rite Aid brought in a temporary computer setup in order to provide Shorette and his staff with six days of in-store training. Thereafter, Rite Aid transferred Shorette's staff to the new Rite Aid store, leaving Shorette alone to man the old store until it was closed one month later. Finally, during this interim period Shorette and other former LaVerdiere managers attended a one-day computer training class.

After the old store closed, Rite Aid transferred Shorette to its Augusta store as an "assistant manager" or "manager trainee" until such time as a new managership became available. During this period, Shorette continued to receive his $31,000 annual salary, while the Augusta store manager, Charles Pattershall, instructed him on how to perform managerial tasks on the computer. After three months, however, Pattershall reported to Rite Aid District Manager Thurston Gilman that Shorette had been able to make little progress. In December 1994, Gilman met with Shorette and informed him that computer proficiency was an essential function for all Rite Aid store managers. Although Pattershall resumed the training effort with Shorette, he reported little headway.

One month later Gilman transferred Shorette to the Rite Aid store in Waterville, whose manager, Wayne Cyrway, was a former LaVerdiere store manager who had proven especially adept at training store managers on the Rite Aid computer system. After initially observing that Shorette had poor computer skills, Cyrway determined to start "from scratch," and provided Shorette with one-on-one, in-store computer training for up to twenty hours weekly. Over the

next three months, James Lucier, the Rite Aid human resources manager, checked with Cyrway, who reported that Shorette seemed unable to absorb and retain the rudimentary concepts of computer operation.

In April 1995, Lucier informed Cyrway that Rite Aid had decided to discontinue training Shorette for a store managership due to Shorette's continued inability to learn the Rite Aid computer system. Lucier asked Cyrway if he would be willing to take Shorette on at the Augusta store as his key cashier, a lower-paying position which required less computer proficiency. Cyrway agreed. The next day Lucier met with Shorette to inform him that Rite Aid could not "afford" to retain him any longer as an assistant manager. After he was given the choice of resigning or being demoted to key cashier, Shorette elected to resign.

In due course Shorette filed a five-count complaint against Rite Aid in Maine superior court, which Rite Aid removed to federal district court. The complaint alleged, *inter alia*, that Rite Aid deliberately forced Shorette to resign because of his age, in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 *et seq.* After discovery had been completed, Rite Aid successfully moved for summary judgment on all counts and Shorette appealed.[1]

## II

### *DISCUSSION*

■ Shorette contends that he adduced adequate evidence to generate a trialworthy issue as to whether Rite Aid forced him to resign because of his age in violation of the ADEA.[2] At all times ADEA plaintiffs bear

the burden of proving that their employer discriminated against them on account of their age. *See Hidalgo v. Overseas Condado Ins. Agencies, Inc.*, 120 F.3d 328, 332 (1st Cir.1997); *Sanchez v. Puerto Rico Oil Co.*, 37 F.3d 712, 723 (1st Cir.1994). Hence, at the summary judgment stage Rite Aid could prevail only if Shorette failed to adduce sufficient evidence from which a rational factfinder could return a verdict in his favor, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *American Airlines, Inc. v. Cardoza–Rodriguez*, 133 F.3d 111, 116 (1st Cir.1998), without resorting to "conclusory allegations, improbable inferences, and unsupported speculation," *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990).

■ Absent direct evidence of discriminatory intent, an ADEA plaintiff may present circumstantial evidence pursuant to the familiar three-stage, burden-shifting paradigm. *See Woodman v. Haemonetics Corp.*, 51 F.3d 1087, 1091 (1st Cir.1995). At the first stage, the plaintiff employee must make a *prima facie* demonstration that he: "(1) was at least forty years of age, (2) met the employer's legitimate job performance expectations, (3) experienced adverse employment action, and (4) was replaced by a person with roughly equivalent job qualifications." *Hidalgo*, 120 F.3d at 332 (citation omitted).[3] Once established, the *prima facie* case raises a presumption that the employer was motivated by discriminatory animus. *Id.* at 334. The burden of production then shifts to the employer to *articulate*—though not to *prove*—a legitimate nondiscriminatory basis for its employment decision. *Id.* Once the

---

1. Shorette does not challenge the district court rulings dismissing his Title VII claim, 42 U.S.C. §§ 2000e *et seq.*, and his three state-law claims, *see* 28 U.S.C. § 1367(c)(3) (governing dismissal of pendent claims for lack of supplemental jurisdiction).

2. Summary judgment rulings are subject to *de novo* review and all contested facts are to be viewed in the light most favorable to the non-movant in determining whether trialworthy issues exist or the movant was entitled to judgment as a matter of law. *See American Airlines, Inc. v. Cardoza–Rodriguez*, 133 F.3d 111, 116 (1st Cir. 1998).

3. Although Rite Aid closed the Fairfield store, *see supra* Section I, thereby eliminating one store managership, we do not consider this a so-called "reduction-in-force" case, which would alter the fourth requirement for establishing a *prima facie* case. Rather, by alleging that Rite Aid hired younger persons as manager trainees after it took over LaVerdiere, Shorette plainly intimates that Rite Aid had other store managerships available, either as a result of attrition or new-store construction, and that these younger manager trainees effectively displaced him.

employer meets its limited burden of production, the presumption of discrimination generated by the *prima facie* case is stricken from the calculus, and the burden returns to the employee to prove not only (1) that the reason the employer articulated for the challenged employment action was a pretext or sham, but (2) that its real reason was the employee's age. *Id.* at 335. Thus, "[i]n pursuing [the third-stage] inquiry, we focus on whether the employer believed that its proffered reason was credible. That is, [plaintiff] must do more than cast doubt on the rationale proffered by the employer, the 'evidence must be of such strength and quality as to permit a reasonable finding that the ... [termination] was *obviously or manifestly unsupported.*'" *Ruiz v. Posadas de San Juan Assocs.*, 124 F.3d 243, 248 (1st Cir. 1997) (emphasis added) (citations omitted).

### A. Direct Evidence of Discriminatory Animus

■ Shorette maintains that various remarks by Rite Aid managers amounted to direct evidence of Rite Aid's age-based animus. First, around the time Rite Aid acquired LaVerdiere, Shorette's district manager, Roland Hughes, asked Shorette how old he was and when he planned to retire. Assuming as much, this is not only a textbook example of an isolated remark which demonstrates nothing, but Shorette was not able to state whether Hughes made the statement before or after the Rite Aid takeover. Consequently, it is impossible to impute the remark to Rite Aid. Moreover, even assuming the remark was made after the Rite Aid takeover, Shorette adduced no evidence that Hughes had authority to determine whether Shorette was to be retained by Rite Aid, nor that Hughes played any role in the decision to demote Shorette to key cashier. *See Santiago v. Canon U.S.A., Inc.*, 138 F.3d 1, 6 n. 8 (1st Cir.1998) (noting that "stray remarks in the workplace ..., state-

ments by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself" normally are insufficient to prove employer's discriminatory animus) (citation omitted); *Medina–Munoz*, 896 F.2d at 10.

■ Second, Wayne Cyrway twice advised Shorette and his wife: "[Y]ou have a perfect case of age discrimination, and you'd be crazy not to pursue it." Shorette insists that these statements support a rational inference that Cyrway had been privy to Rite Aid's decisionmaking processes and enabled Cyrway to acquire some undisclosed information regarding the alleged discriminatory rationale which motivated Rite Aid to demote Shorette. We conclude, however, that Shorette adduced insufficient evidence to permit the attribution of Cyrway's remarks to Rite Aid.

In *Connell v. Bank of Boston*, 924 F.2d 1169 (1st Cir.1991), a bank officer attested that the defendant bank had intended to eliminate more senior employees than younger employees during a planned reduction-in-force. We identified three reasons for holding the evidence insufficient to withstand the bank's motion for summary judgment. First, the plaintiff had adduced no evidence that the affiant had participated in the bank's decisionmaking process with respect to the reduction-in-force. Second, the plaintiff offered no other specific evidence as to *how* the affiant might have learned the true intent of the bank's decisionmakers. Finally, in contravention of Federal Rule of Evidence 701, the affiant, a lay witness, testified to his personal opinion on the ultimate legal issue in the case—whether the bank acted with discriminatory intent. *Id.* at 1177–78 & n. 7.

■ The remark attributed to Cyrway is similarly flawed. Cyrway repeatedly disavowed any participation in Rite Aid's decisions to employ or discharge store managers, and in its decision to demote Shorette.[4] As one might expect, the individual store man-

---

4. Cyrway testified, *inter alia,* that (1) he did not "have any role or any input at all into the decision of which [LaVerdiere] stores were to close"; (2) he did not "have any knowledge as to what the [district manager] was doing in terms of the transition ... integrating the LaVerdiere's store[s] into the Rite Aid chain"; (3) he never

spoke to Jim Lucier [*i.e.*, Rite Aid's human resources manager] before Shorette was transferred to Cyrway's store; (4) he responded three times to Lucier's inquiries about Shorette's computer training, on each occasion advising Lucier that Shorette was making little progress; (5) no Rite Aid official ever visited Cyrway's store while

agers had authority over their respective stores and staffs, but made neither company-wide policy nor employment decisions regarding other store managers. Instead, Cyrway simply reported Shorette's progress, then learned of Rite Aid management decisions after the fact.[5] Thus, absent any evidentiary basis for inferring that Cyrway took part in meetings or discussions at a decision-making level, Shorette would have the jury indulge in speculation. *See Hidalgo*, 120 F.3d at 338 (in proving an ADEA claim, "[o]ptimistic conjecture ... or hopeful surmise will not suffice"); *Medina–Munoz*, 896 F.2d at 8. Even viewed most favorably to Shorette, however, this evidence strongly suggests that Cyrway's remarks simply represented an uninformed lay judgment that Shorette might be able to present a *circumstantial* case of discriminatory animus. Absent any suggestion or evidence that he was an expert on employment discrimination claims, Cyrway's lay opinion as to whether the circumstantial evidence suggested that Rite Aid harbored a discriminatory animus— the ultimate legal issue in the case—in all likelihood would have been inadmissible at trial.[6] *See Casas Office Machs., Inc. v. Mita Copystar Am., Inc.*, 42 F.3d 668, 681 (1st Cir.1994) (noting that, "[u]nder [Federal] Rule [of Civil Procedure] 56(e), affidavits supporting or opposing summary judgment must set forth facts that would be *admissible in evidence*") (emphasis added).

---

Shorette trained there; (6) Lucier took Cyrway aside at an April 1995 computer training class, told Cyrway that Rite Aid had decided it could not afford to keep Shorette as a store manager or trainee, and asked Cyrway if he would take Shorette on as a key cashier; (7) the next day, Lucier informed Shorette of Rite Aid's decision, but Cyrway had no "firsthand knowledge" of that conversation; and (8) *after* Shorette resigned, Lucier asked Cyrway to summarize in writing his opinion of Shorette's computer proficiency.

5. In an effort to avoid the purport of *Connell*, Shorette points out that Cyrway did "influence" Rite Aid's decisionmaking by providing Lucier with updates on Shorette's computer training, *see Mulero–Rodriguez v. Ponte, Inc.*, 98 F.3d 670 (1st Cir.1996). *Mulero* is inapposite, however. The comments made by the nondecisionmaking employee in *Mulero* were themselves discriminatory, since the nondecisionmaking employee, not the decisionmaker, had remarked that the plaintiff was the only Puerto Rican running a Cuban company. *See id.* at 675. We noted that the employee-declarant "was in a position to influence [the employer's] decisionmaking," and that the employer trusted the officer's word over plaintiff's. *Id.* at 675–76. Unlike the statement by the defendant's officer in *Mulero,* the Cyrway statement did not disclose Cyrway's attitude or animus in regard to Shorette's age, but merely purported to divine Rite Aid's discriminatory intent. Thus, the Cyrway remark does not support a rational inference that he may have acted out a discriminatory animus by somehow attempting to "frame" Shorette, *e.g.,* passing along false reports about Shorette's computer proficiency to Lucier and Rite Aid. In all events, Shorette failed to adduce any evidence that Cyrway's reports to Lucier contained any *false* assessment of his computer skills, *see infra* Section II.B. *See Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1400 (7th Cir.1997) (noting that a nondecisionmaker's discriminatory remark might be imputed to the employer were the plaintiff to prove that

"the [nondecisionmaker-] subordinate, by concealing relevant information from the decision-making employee or feeding false information to him, is able to influence the decision").

6. Shorette states that Lucier told him in April 1995 that Rite Aid could not "afford" to keep Shorette on as manager, and argues that this remark supports an inference that Rite Aid intended to hire young managers willing to work for only $25,000 per year, and get rid of older managers like Shorette who were receiving substantially higher salaries. *Cf. Rivas v. Federacion de Asociaciones Pecuarias de Puerto Rico*, 929 F.2d 814, 821–22 (1st Cir.1991) ("'[E]conomic savings from discharging older employees is not a legitimate business justification under the ADEA.'"). Nevertheless, on its face the remark connotes no overt reference to Shorette's age. Moreover, *assessed in context* it suggests that Rite Aid had decided to give Shorette the choice of resigning or accepting a lesser-paying key cashier position, given his inability to perform the computer tasks essential to a store managership. We think it would be unreasonable to conclude that Rite Aid, in these circumstances, had no choice under the ADEA but to retain, as a store manager, an employee who was unable to develop an acceptable level of skill in the performance of an essential job function despite extensive training. Rather, the only rational inference which can be drawn from the present record in this respect is that Rite Aid could not "afford" to continue paying Shorette $31,000 per year to serve as a permanent manager trainee or a key cashier, particularly since fully qualified Rite Aid store managers were earning only $25,000 per year. *See Goldman v. First Nat'l Bank of Boston*, 985 F.2d 1113, 1118 n. 4 (1st Cir.1993) ("'[A] 'mere showing that the employer's articulated reason may shield another (possibly nondiscriminatory) reason does not create a dispute of material fact' sufficient to withstand summary judgment.") (citation omitted).

## B. Indirect Evidence of Discriminatory Animus

Absent direct evidence of discriminatory intent, Shorette was forced to resort to circumstantial evidence. For present purposes we assume *arguendo* (albeit dubiously) that Shorette established a *prima facie* case.[7] Further, Rite Aid plainly articulated a nondiscriminatory reason for demoting Shorette: his inability to achieve adequate computer proficiency. Thus, we focus on whether Shorette adduced sufficient evidence from which a rational factfinder could have inferred *both* that Rite Aid's articulated reason was a pretext, *i.e.*, "obviously or manifestly unsupported," *Ruiz,* 124 F.3d at 248, *and* that its real reason for demoting Shorette was an age-based animus. *See Hidalgo,* 120 F.3d at 335.

The patchwork of circumstantial evidence presented by Shorette fails to limn pretext, let alone discriminatory intent. On the other hand, the principal witnesses for Rite Aid—Pattershall and Cyrway—described in great detail Shorette's inability to develop even minimal computer proficiency after six months of intensive on-site training, and hence his inability to perform core job functions required of all Rite Aid store managers. Nor did Shorette adduce competent evidence to rebut these assessments of his computer aptitude. Although Shorette disputed these assessments, his personal opinion regarding his own job qualifications is not sufficiently probative on the issue of pretext. *See Holifield v. Reno,* 115 F.3d 1555, 1565 (11th Cir. 1997) ("The inquiry into pretext centers upon the employer's beliefs, and not the employee's own perceptions of his performance."); *Ost v. West Suburban Travelers Limousine, Inc.,* 88 F.3d 435, 441 (7th Cir.1996) ("It is well settled, however, that a plaintiff's own opinions about her work performance or qualifications do not sufficiently cast doubt on the legitimacy of her employer's proffered reasons for its employment actions."); *Evans v. Technologies Applications & Serv. Co.,* 80 F.3d 954, 960–61 (4th Cir.1996) (" 'It is the perception of the decision maker which is relevant,' not the self-assessment of the plaintiff.") (citation omitted); *Shapolia v. Los Alamos Nat'l Lab.,* 992 F.2d 1033, 1039 (10th Cir.1993) (same). The record contains no evidence whatsoever that Rite Aid ever believed that Shorette had acquired adequate computer skills.

Shorette nevertheless attempts to bootstrap by relating every instance in which he believes he received less favorable treatment than other former LaVerdiere store managers. For example, he contends that (1) Rite Aid sabotaged his computer training from the outset by installing an obsolete computer in the Fairfield store, while equipping other former LaVerdiere stores with new computer systems; (2) he was the only LaVerdiere store manager over age 60, and the only one who was "demoted" to assistant manager; (3) the demotion violated Rite Aid's policy of not hiring an assistant manager until it had a specific store managership available; and (4) Rite Aid did not provide him with a permanent engraved name tag, even though its policy was to provide them to managers and assistant managers. These contentions are unavailing, however, since the challenged actions are entirely compatible with the nondiscriminatory rationale offered by Rite Aid. *See Goldman v. First Nat'l Bank of Boston,* 985 F.2d 1113, 1120 (1st Cir.1993) (noting that ADEA plaintiff could not rely solely on employer conduct for which there was an age-neutral explanation).

First, Rite Aid slated the Fairfield store for closure because it was located right next to its newly constructed Rite Aid outlet, for which Rite Aid had hired a manager *prior to the LaVerdiere takeover.* Thus, Rite Aid reasonably could not be expected to install a new computer in a store scheduled to close within a matter of weeks. In all events, whatever probative force this evidence may have is greatly outweighed by the subsequent transfer of Shorette to the Rite Aid stores in Augusta and Waterville, where he was provided with more than *six months* training on a *new* computer system.

---

**7.** We indulge this assumption *arguendo* since there is grave doubt that Shorette established the second prong of the *prima facie* case, *i.e.*, that

"[he] met the employer's legitimate job performance expectations."

■ Second, notwithstanding the record citations in Shorette's appellate brief, *see* Fed. R.App. P. 28(a)(4), he failed to adduce competent evidence that he was either the only former LaVerdiere store manager whose store was closed after the takeover, or the only one Rite Aid temporarily "demoted" to assistant manager. Rather, Shorette testified that he was "the only one [*viz.*, LaVerdiere store manager] *in the Waterville area* that was 60 years old or older" who was demoted. (Emphasis added.) This tiny statistical sampling proves too little, however. *See, e.g., LeBlanc v. Great Am. Ins. Co.*, 6 F.3d 836, 849 (1st Cir.1993) (noting that, in disparate-treatment ADEA case, " 'a small statistical sample carries little or no probative force to show [age] discrimination' ") (citation omitted); *see also DeNovellis v. Shalala*, 135 F.3d 58, 65 (1st Cir.1998) (same). Nor is there other evidence of pertinent company-wide statistics.

■ Third, the alleged Rite Aid policy of hiring manager trainees only when a specific store-managership opened up is a red herring, since the LaVerdiere takeover presented an entirely different scenario: the need to close one store and thereby eliminate one store-managership. That is to say, Shorette was not "hired" as an assistant manager, but merely reassigned on a temporary basis due to the Fairfield-store closure. Shorette adduced no evidence of any company policy for dealing with that distinct eventuality, nor is it in any sense unreasonable or suspect that Rite Aid would assign a displaced store manager to an assistant-managership on a temporary basis until another store-managership became available.

■ Fourth, even assuming that the failure to provide Shorette with a name tag could support an attenuated inference that Rite Aid knew *ab initio* (*i.e., before* Shorette's inability to develop the required computer skills became known) that it planned eventually to force him out of the company because of his age, such a lapse is equally consistent with a nondiscriminatory intent. For example, because the Fairfield store was closing, and Shorette was about to embark on a transitory reassignment, it would be entirely reasonable to defer the issuance of a permanent name tag until Shorette once again could be appointed a permanent manager. Indeed, more fundamentally Shorette presented no evidence from which it might be inferred that the failure to issue him a name tag during the LaVerdiere takeover was anything other than an oversight, much less an intentional discriminatory act.

■ Shorette points also to evidence that Rite Aid contemporaneously hired younger persons as store managers (*e.g.*, the manager of its new Fairfield Rite Aid store), or as manager trainees in the Augusta store. Importantly, however, Rite Aid had hired the manager of its new Fairfield Rite Aid *before* the LaVerdiere takeover, and plainly was under no obligation to offer that store-managership to Shorette. *See Pages–Cahue v. Iberia Lineas Aereas de Espana*, 82 F.3d 533, 538–39 (1st Cir.1996) (employers have no obligation under ADEA to dismiss younger worker so as to create job opening for older plaintiff).

■ Shorette's anecdotal evidence that Rite Aid hired two manager trainees after the LaVerdiere takeover is flawed as well. That these two manager trainees were in their 20's and 30's reveals nothing statistically meaningful about Rite Aid's company-wide hiring practices. For all the record discloses, these two trainees may have been the *only* young persons Rite Aid hired during this period. *See Goldman*, 985 F.2d at 1119 (such anecdotal evidence does not give rise to an inference that older employees were "disproportionately affected" by an employer's actions, "much less that age discrimination motivated their dismissal"); *see also LeBlanc*, 6 F.3d at 848–49 (noting various flaws and lapses in ADEA plaintiff's sketchy statistical information). Nor did Shorette attempt to show that either of the manager trainees went on to become a store manager, thereby displacing him, *see supra* note 3, nor adduce any evidence that either trainee was either equally or less proficient than Shorette in operating the Rite Aid computer system, thus equally or less qualified for a store-manager position. *See Testerman v. EDS Tech. Prods. Corp.*, 98 F.3d 297, 305 (7th Cir.1996) (noting that such evidence might be

probative of pretext); *Hidalgo,* 120 F.3d at 332 (noting that fourth prong of *prima facie* case requires plaintiff to prove that "[he] was replaced by a person with roughly equivalent job qualifications").

 Finally, Shorette argues that Rite Aid failed to abide by its established policy contemporaneously to document trainees' deficiencies in formal Trainee Progress Reports, and instead had Pattershall and Cyrway write up their assessments of his computer skills as informal notes *after* Shorette brought suit. *See, e.g., Futrell v. J.I. Case,* 38 F.3d 342, 349 (7th Cir.1994) (employer's failure to follow contemporaneous procedure, and later attempts to make it falsely appear that its reasons predated its employment action, may be evidence of discriminatory intent). From this premise, Shorette would have a factfinder infer that Rite Aid, after the fact, manufactured its allegation that he lacked the requisite computer skills.

The record fails to bear out Shorette's premise. Rather, Shorette's counsel asked Rite Aid District Manager Gilman whether "Rite Aid has a formal warning notice and corrective review," to which Gilman replied: "Yes." Gilman then admitted that the only documentation he had seen concerning Shorette's computer training were the "notes" of Pattershall and Cyrway. When pressed by Shorette's counsel to deny that Pattershall and Cyrway prepared these notes after Shorette filed suit, Gilman responded that he did not know when the notes were prepared. Thus, the record fails to disclose whether Rite Aid's so-called "formal warning notice and corrective review" procedure was mandated in all instances, or even in such cases as Shorette's.[8] More importantly, the mere *suggestion* to Gilman that the Pattershall and Cyrway "notes" were not made contemporaneously with Shorette's training is no substitute for *evidence* that the notes were produced after Shorette filed suit. Thus, once again Shorette would have the factfinder rely

upon "unsupported speculation." *See Medina–Munoz,* 896 F.2d at 8.

## III

### *CONCLUSION*

As Shorette failed to adduce either direct or circumstantial evidence which would enable a rational jury to find in his favor, the district court judgment must be *affirmed; costs to appellee.*[9]

*SO ORDERED.*

---

8. Even if it were mandated, however, case law suggests that an employer's failure to follow internal procedures, standing alone, normally is not evidence of discriminatory animus under the ADEA. *See Randle v. City of Aurora,* 69 F.3d 441, 454 (10th Cir.1995); *Moore v. Eli Lilly & Co.,* 990 F.2d 812, 819 (5th Cir.1993). For the alter-

nate reasons already stated, however, we need not reach that issue.

9. The other alleged "incidents" from which Shorette would infer pretext and discriminatory intent merit no separate discussion.