Anthony MARTIN, Plaintiff,

v.

WELLESLEY COLLEGE, Defendant.

No. 97–CV–12611–JLT.

United States District Court, D. Massachusetts.

June 2, 1999.

Winston Kendall, Boston, MA, for Anthony P. Martin, Plaintiff.

William L. Patton, Ana M. Francisco, Ropes & Gray, Boston, MA, for Wellesley College, Defendant.

MEMORANDUM

TAURO, Chief Judge.

## I. INTRODUCTION

Plaintiff Anthony Martin brings this action against his employer, Wellesley College, alleging that Wellesley denied his application for a merit raise because of his race. Wellesley's motion for summary judgment is at hand. For the reasons given below, the court allows Wellesley's motion in its entirety.

## II. FACTS

Martin, a black man, is a tenured professor of African Studies at Wellesley. Professors at Wellesley are eligible to be considered for a merit salary increase every three years. Wellesley denied Martin a merit increase in June of 1994, claiming that his scholarship was shoddy and not worthy of a merit increase. Martin alleges that Wellesley denied the increase because he is black.

Pursuant to Wellesley's procedures, the school's President, Diana Chapman Walsh, has the sole discretion to decide whether to award merit increases. In making that decision, the President consults with the Advisory Committee on Merit, composed of full professors elected by their colleagues. The decision is based on the candidate's three previous years of teaching, scholarship, service to the candidate's department and the college as a whole, as well as professional activities outside the college. The President and the Advisory Committee assess the candidate's professional work by reviewing materials presented by the candidate along with the candidate's faculty appointment files. They then rate the candidate on a scale of 0 to 3. A candidate who earns a 3 receives 100% of the maximum merit award ($4,689 in 1994). Candidates with lower scores receive a pro-rated portion of the maximum.

Martin, in response to Dean Nancy Kolodny's request for materials for the President and the Advisory Committee to consider, submitted four book reviews, seven articles, a self-published book entitled *The Jewish Onslaught: Dispatches from the Wellesley Battlefront*, and a personal statement and activities sheet highlighting what he considered to be his most important work.

President Walsh and the Advisory Committee reviewed Martin's files as well as his submissions and awarded him a rating of 0. Walsh wrote Martin a letter stating that she was denying him a merit increase because of the "degradation of [his] scholarship, and the apparent effects on the quality of his teaching." Walsh added that Martin's work from 1991 to 1994 "warranted a statement of disapproval and concern and certainly [did] not warrant a merit increase." Of thirty professors eligible for merit increases—including twenty seven whites, two Asians, and one black (Martin)—only Martin did not receive one. Walsh later publicly stated that Martin's book was "offensive," and the Wellesley History Department de-listed Martin's courses.

## III. ANALYSIS

Martin sued in state court, bringing claims under: (1) 42 U.S.C. § 1981; (2) 42 U.S.C. § 2000e *et seq.*; (3) M.G.L. c. 151B, § 4; (4) M.G.L. c. 151B, § 4(4); and (5) Massachusetts contract law. Wellesley moved for summary judgment, arguing that it denied Martin a merit raise because of his deteriorating scholarship, not because of his color.

### A. Employment Discrimination Claims

As Martin has no direct evidence of racial discrimination, the *Burdine* burden-shifting analysis governs his federal and state employment discrimination claims. *See Texas Dep't of Comm. Affairs v. Burdine,* 450 U.S. 248, 252–254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (setting forth burden-shifting approach). Under *Burdine,* once a plaintiff establishes a prima facie

case, the defendant must advance a legitimate, non-discriminatory reason for the challenged decision. *See id.* at 253, 101 S.Ct. 1089. If the defendant advances a legitimate reason, the plaintiff has the burden of proving that the reason is a pretext for illegal discrimination. *See id.*

For purposes of this motion, the court assumes that Martin has established his prima facie case. Wellesley meets its burden by offering a legitimate reason for denying the raise—the degeneration of Martin's scholarship, evidenced primarily by his self-published book, *The Jewish Onslaught.*

*The Jewish Onslaught* recounts the brouhaha over Martin's use of a book called *The Secret Relationship Between Blacks And Jews* ("*The Secret Relationship* ") in his classes. Written by an anonymous author, *The Secret Relationship* examines Jewish involvement in the African slave trade. Jewish groups on the Wellesley campus criticized Martin for using the book, which they claimed was anti-Semitic. Martin, in *The Jewish Onslaught,* accuses the critics of being part of a Jewish conspiracy to stifle his attempts to expose the Jews' role in the slave trade.

 President Walsh claims that she and the Advisory Committee, after reviewing *The Jewish Onslaught* and Martin's other submissions, decided to deny him a merit increase "[b]ecause of the degradation of his scholarship as evidenced in the publication of *The Jewish Onslaught* . . . [a]nd the apparent effect on his teaching." (Deposition of Diana Chapman Walsh at 134–35.)

By offering a legitimate reason for denying Martin's merit raise, Wellesley shifts the burden to Martin to "adduce sufficient evidence to support a finding that [the stated reason] was not only a pretext, but that it was a pretext for illegal [racial] discrimination." *Smith v. Stratus Computer, Inc.,* 40 F.3d 11, 16 (1st Cir.1994).

In other words, Martin must not only offer "specific facts which would enable a jury" to conclude that Wellesley's explanation was a "sham," but he must also produce evidence showing that it was "a sham intended to cover up the employer's real motive," namely, racial discrimination. *Medina–Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990).

Martin falls far short of meeting these burdens. In an attempt to show pretext, Martin offers testimony from Professor Raymond Winbush of Fisk University, who says that *The Jewish Onslaught* is an important, valid work with all the indicia of scholarship, such as thorough documentation and a fat appendix. Although Professor Winbush has no first-hand knowledge of Wellesley's reasons for denying Martin's merit raise,[1] his testimony establishes a disputed question of fact as to whether Martin's work meets professional and academic standards. Were that the issue in this case, this court would deny summary judgment.

The pertinent question in the pretext analysis, however, is not whether or not Martin is a bad scholar, but whether Wellesley believed he was a bad scholar. The "focus [is] on whether the employer believed that its proffered reason was credible." *Shorette v. Rite Aid of Maine, Inc.,* 155 F.3d 8, 13 (1st Cir.1998). The reasons for deferring to the employer's judgment are particularly strong in an academic context. " 'Court have wisely recognized the importance of allowing universities to run their own affairs (and to make their own mistakes),' " and "are hesitant to intrude upon academic freedom, which, 'although not a specifically enumerated constitutional right, long has been viewed as a special concern of the First Amendment.' " *Villanueva v. Wellesley College,* 930 F.2d 124, 129 (1st Cir.1991) (citation omitted). Martin cannot show pretext merely by casting "doubt on the rationale proffered" by Wellesley. *Id.* at 127–28. His "evi-

1. Professor Winbush opines that Wellesley discriminated against Martin, but this conclu-

sion is beyond the scope of both his expertise and his personal knowledge.

dence must be of such strength and quality as to permit a reasonable finding that the . . . [challenged action] was obviously or manifestly unsupported." *Shorette*, 155 F.3d at 13 (citation omitted).

Martin has no evidence showing that Wellesley fabricated its criticisms of his work. Professor Winbush's disagreement with Wellesley's view of Martin's work does not show that Wellesley's view is unsupportable or insincere. Rather, it merely shows that Winbush and Wellesley differ on an extremely complex and subjective question, namely, the merit of a professional historian's work.[2] By analogy, a painter could not show that a critic's castigation of his paintings was a facade for some other vendetta merely by producing another critic who liked the painter's work. A "rational factfinder" looking at the evidence could not infer that Wellesley's "articulated reason was a pretext, i.e., 'obviously or manifestly unsupported.'" *Shorette*, 155 F.3d at 15 (citation omitted).

Even if Martin could show pretext, his inability to demonstrate discriminatory intent dooms his discrimination claims. As stated, Martin must show not only that Wellesley's reasons are pretextual, but that they are a pretext for illegal discrimination. *See Smith*, 40 F.3d at 16. Professor Winbush's testimony is worthless on this score, as it shows only a difference of opinion. Martin also points to President Walsh's public criticism of his work and the History Department's decision to delist his course as evidence of discrimination. In fact, these actions are consistent with Wellesley's stated position that it was dissatisfied with and disturbed by Martin's work. *See Shorette*, 155 F.3d at 15 (rejecting plaintiff's evidence of discrimination

because it is "entirely compatible with the nondiscriminatory rationale offered by [defendant].")

### B. *Retaliation Claim*

██ Under Massachusetts law, a plaintiff suing for retaliation must show that the retaliation was in response to his engaging in a protected activity. *See* M.G.L. c. 151B, § 4(4); *Morris v. Boston Edison Co.*, 942 F.Supp. 65, 68–69 (D.Mass.1996) (prima facie retaliation case includes showing that plaintiff engaged in a protected activity). The statute limits protected activities to "filing a complaint, testifying or assisting, in statutory governmental proceedings." *Morris*, 942 F.Supp. at 70. Martin's use of *The Secret Relationship* and his publication of *The Jewish Onslaught* are not protected activities. As Martin has not alleged that he filed a complaint or participated in any governmental proceedings, his retaliatory discharge claim must be dismissed. Furthermore, even if Martin had engaged in a protected activity, he has no evidence that Wellesley's denial of his merit raise was based on anything other than the school's disappointment with his work.

### C. *Breach Of Contract*

██ Martin accuses Wellesley of breaching provisions in his employment contract pledging to observe fair employment practices and to comply with federal and state anti-discrimination laws. This claim suffers from the same fatal flaw as the rest of Martin's case; namely, he has not shown that Wellesley discriminated against him or violated any laws.

Martin also accuses Wellesley of deviating from its procedures by considering his application in its entirety "rather than in a segmented fashion." Plaintiff's Memorandum In Opposition To Summary Judgment at 6. Martin offers no evidence, however, showing that Wellesley's procedures require segmented review.

---

**2.** Martin attacks Wellesley's use of subjective criteria to evaluate candidates for merit raises. Evaluating an academic's work, however, is an inherently subjective task. "[T]he elasticity of . . . standards for [evaluating] teachers in an academic setting does not constitute, in and of itself, evidence of discrimination." *Jackson v. Harvard University*, 721 F.Supp. 1397, 1404 (D.Mass.1989).

## IV. CONCLUSION

Defendant Wellesley's Motion for Summary Judgment is ALLOWED in its entirety.