<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                 United States Court of Appeals
                     For the First Circuit
                      ____________________

No. 98-1732

                    JORGE RODRIGUEZ-CUERVOS,

                     Plaintiff, Appellant,

                               v.

                 WAL-MART STORES, INC., ET AL.,

                     Defendants, Appellees.

                      ____________________

          APPEAL FROM THE UNITED STATES DISTRICT COURT

                FOR THE DISTRICT OF PUERTO RICO

      [Hon. Jaime Pieras, Jr., Senior U.S. District Judge]

                      ____________________

                             Before

                    Torruella, Chief Judge,

                     Selya, Circuit Judge,

               and Acosta, Senior District Judge.

                     _____________________

   Maricarmen Almodvar-Daz for appellant.
   Frances R. Coln-Rivera, with whom Luis F. Antonetti and
Goldman Antonetti & Crdova, P.S.C. were on brief, for appellees.

                      ____________________

                         June 11, 1999
                      ____________________

        TORRUELLA, Chief Judge.  Plaintiff-appellant Jorge
Rodrguez-Cuervos ("Rodrguez") filed a complaint charging
defendant-appellee Wal-Mart Stores, Inc. ("Wal-Mart") with illegal
race and national origin discrimination in violation of federal
law.  Rodrguez now appeals the district court's grant of summary
judgment in favor of the former employer, Wal-Mart.  We affirm.
                           BACKGROUND
        Rodrguez, who is a U.S. citizen born in Puerto Rico,
began his employment with Wal-Mart in March 1991.  At that time,
Wal-Mart was preparing to open its first stores in Puerto Rico.  
Rodrguez assisted Wal-Mart with the opening of these stores and
received training in order to become a store manager.  Rodrguez
participated in Wal-Mart training programs in Florida and Arkansas.
        On March 7, 1992, Rodrguez was promoted to the position
of Division Manager in Wal-Mart's Store Planning Division, and
received a salary increase.  As Division Manager, Rodrguez was
responsible for the commencement of Wal-Mart's business operations
in Fajardo and Hatillo -- two municipalities located in the
northeast and northwest of Puerto Rico, respectively.
        On April 15, 1993, Rodrguez's supervisor rated his
overall performance as "exceeded expectations."  Under the heading
"Overall Strengths," the supervisor described Rodrguez as
possessing "a sense of urgency to help when and where he is needed
to get Wal-Mart established in Puerto Rico" and "a good caring
attitude towards associates."
        Shortly after this evaluation, Rodrguez was appointed
manager of the Wal-Mart store in Isabela.  On March 19, 1994,
Rodrguez's managerial performance was again evaluated.  Although
his supervisor cited several areas needing improvement, he
concluded that Rodrguez's overall performance again "exceeded
expectations."  The evaluator described Rodrguez as a "good
communicator" with a winning "Yes I Can" attitude.
        Sometime in mid-1994, Rodrguez was named manager of the
Fajardo store.  On November 17, 1994, Rodrguez's performance as
Fajardo store manager was evaluated by William Cahill, District
Manager for Wal-Mart in Puerto Rico, and Hctor Vzquez, Wal-Mart's
Human Resources Director for Puerto Rico.  Cahill and Vzquez
informed Rodrguez of the results of this evaluation in a
memorandum dated November 23, 1994.  The memorandum outlined
several "opportunities" for improvement in Rodrguez's management
of the Fajardo store, and requested that Rodrguez submit a written
action plan in response to the cited "opportunities."  The
Cahill/Vzquez memorandum also presented Rodrguez with an
ultimatum: either step down from the position of manager of the
Fajardo store and be re-trained, or stay on as manager and be held
accountable for the results of an attitude survey to be conducted
in three days' time, among all of the Fajardo associates.  
Rodrguez chose the latter option.
        Good to their word, Cahill and Vzquez conducted an
opinion survey of the Fajardo associates on November 26, 1994.  On
December 27, Rodrguez received the results of this survey, which
ranked Rodrguez in several areas as compared with other managers
at the store.  Cahill and Rodrguez discussed the survey results,
and on January 10, 1995, Cahill again evaluated Rodrguez's
performance in Fajardo.  This time Rodrguez received an overall
performance rating of "didn't meet expectations."  By memorandum
dated May 3, 1995, Wal-Mart removed Rodrguez from the position of
store manager.  Rodrguez was subsequently demoted to an assistant
manager position in the Hatillo store.
        In due course, Rodrguez filed a complaint alleging  Wal-
Mart discriminated against him based on his race, ethnicity, and
national origin, in violation of Title VII of the Civil Rights Act
of 1964, 42 U.S.C.  2000-e, and 42 U.S.C.  1981.  Wal-Mart moved
to dismiss Rodrguez's complaint on the ground that it failed to
state a prima facie case of race or national origin discrimination
as required under the burden-shifting framework established in
McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-804 (1973).  In
its subsequent Reply to Plaintiff's Response to Dispositive Motion,
Wal-Mart also argued that Rodrguez failed to establish that its
legitimate and non-discriminatory reason for Rodrguez's demotion
was, in reality, a pretext for race or national origin
discrimination.
        On April 8, 1997, the district court issued an order
advising the parties that the motion to dismiss would be treated as
a motion for summary judgment.  On April 30, the district court
clarified its April 8 order and advised Rodrguez "to proceed to
engage in discovery . . . in order to adequately oppose the motion
for summary judgment."  Finally, on January 9, 1998, the district
court granted summary judgment in favor of Wal-Mart.  Rodrguez now
appeals.
                           DISCUSSION
        We review the district court's grant of summary judgment
de novo, viewing the facts in the light most favorable to the non-
moving party, Rodrguez.  See Dominique v. Weld, 73 F.3d 1156, 1158
(1st Cir. 1996).
        Absent direct evidence of discrimination, a Title VII
plaintiff must resort to the three-stage burden-shifting framework
set forth in McDonnell Douglas.  See Ayala-Gerena v. Bristol Myers-
Squibb Co., 95 F.3d 86, 96 (1st Cir. 1996).  Under this framework,
the plaintiff shoulders the initial burden of adducing a prima
facie case of unlawful discrimination.  This includes a showing
that: (1) plaintiff is a member of a protected class; (2)
plaintiff's employer took an adverse employment action against him;
(3) plaintiff was qualified for the employment he held; and (4)
plaintiff's position remained open or was filled by a person whose
qualifications were similar to his.  See St. Mary's Honor Center v.
Hicks, 509 U.S. 502, 506 (1993); McDonnell Douglas, 411 U.S. at
802; Conward v. Cambridge Sch. Comm., 171 F.3d 12, 19 (1st Cir.
1999).  Establishment of a prima facie case creates a presumption
of unlawful discrimination.  See Texas Dep't of Community Affairs
v. Burdine, 450 U.S. 248, 254 (1981).  Once a plaintiff establishes
a prima facie case, the burden shifts to the employer to rebut this
presumption by articulating a legitimate, non-discriminatory reason
for its adverse employment action.  See McDonnell Douglas 411 U.S.
at 802; Shorette v. Rite Aid of Maine, Inc., 155 F.3d 8, 12 (1st
Cir. 1998).  In the third and final stage, the burden devolves
upon the plaintiff to prove that the reasons advanced by the
defendant-employer constitute mere pretext for unlawful
discrimination.  See Hicks, 509 U.S. at 507-508; Woods v. Friction
Materials, Inc., 30 F.3d 255, 260 (1st Cir. 1994).  To meet this
burden, the plaintiff must prove not only that the reason
articulated by the employer was a sham, but also that its true
reason was plaintiff's race or national origin.  See Shorette, 155
F.3d at 13.
        As mentioned above, see supra, note 1, at all times
Rodrguez bears the burden of proving that Wal-Mart discriminated
against him on the basis of race and/or national origin.  Thus, at
the summary judgment stage, Wal-Mart could prevail only if
Rodrguez failed to adduce sufficient evidence from which a
rational fact-finder could conclude that he was demoted because he
is Puerto Rican.  See Shorette, 155 F.3d at 12.  Put another way,
Rodrguez cannot avert summary judgment if the record is devoid of
adequate direct or circumstantial evidence of intentional racial,
ethnic, or national origin discrimination on the part of Wal-Mart.  
On appeal, Rodrguez contends that he did adduce adequate evidence
to generate a trialworthy issue as to whether Wal-Mart
discriminated against him in violation of Title VII.  In the
alternative, Rodrguez argues that the district judge abused his
discretion in denying his post-judgment request for additional time
to conduct discovery in order to properly oppose Wal-Mart's motion
for summary judgment.  We disagree on both counts.
A.  Summary Judgment
        For present purposes, we assume arguendo that Rodrguez
carried his initial burden of establishing a prima facie case.  
Further, it is clear that Wal-Mart satisfied its limited burden of
production  by articulating a legitimate, non-discriminatory reason
for demoting Rodrguez: namely, his unsatisfactory performance.  
Thus, we focus on the ultimate issue: whether Rodrguez adduced
sufficient evidence from which a rational factfinder could have
inferred both that Wal-Mart's articulated reason was a pretext, and
that its true reason for demoting Rodrguez was racial, ethnic, or
national origin discrimination.  See Shorette, 155 F.3d at 15.
        To prove that Wal-Mart's proffered reason for demoting
him was merely pretextual, Rodrguez points to two previous
performance evaluations in which he was rated as exceeding the
company's expectations.  Rodrguez argues that because the contents
of his prior evaluations contradict Cahill's findings in the
January 10 evaluation, Cahill's findings must be pretextual.  The
problem with this argument is that in relying on his past
performance evaluations, Rodrguez fails to take into account the
fact that he was working in different capacities at different
stores, under different supervisors with different expectations.  
As a result, Cahill's evaluation is not necessarily inconsistent
with Rodrguez's past positive reviews.  As the district court
noted, from this evidence "a reasonable juror could only infer
. . . that Plaintiff at one time exceeded expectations . . . under
the first district manager but that the later ratings by Cahill in
late 1994 and early 1995 found Rodrguez's performance lacking."  
(1/9/98 Op. & Order at 20.)  The fact that Cahill may have had
different expectations for Rodrguez, even if those expectations
were contrary to those of Rodrguez's prior supervisors, does not
support a finding of pretext.  See Orisek v. American Institute of
Aeronautics & Astronautics, 938 F. Supp. 185, 191 (S.D.N.Y. 1996).
        In addition to his history of positive performance
evaluations, Rodrguez offered comparative evidence of Wal-Mart's
disparate treatment of non-Puerto Rican store managers.  It is
fundamental that "[a] claim of disparate treatment based on
comparative evidence must rest on proof that the proposed analogue
is similarly situated in all material respects."  Perkins v.
Brigham & Women's Hosp., 78 F.3d 747, 751 (1st Cir. 1996).  The
comparison cases need not be perfect replicas. See Conward, 171
F.3d at 20.  Rather, the test is whether a "prudent person, looking
objectively at the incidents, would think them roughly equivalent
and the protagonists similarly situated."  Dartmouth Review v.
Dartmouth College, 889 F.2d 13, 19 (1st Cir. 1989).  Thus, in
offering this comparative evidence, Rodrguez bears the burden of
showing that the individuals with whom he seeks to be compared
"have been subject to the same standards and have engaged in the
same conduct without such differentiating or mitigating
circumstances that would distinguish their conduct or the
employer's treatment of them for it."  Mitchell v. Toledo Hosp.,
964 F.2d 577, 583 (6th Cir. 1992).  Rodrguez's evidence fails to
satisfy this test.
        The comparative evidence submitted by Rodrguez consists
of a performance evaluation of Russ Steiner, a non-Puerto Rican
manager of the Hatillo Wal-Mart store.  Rodrguez contends that he
and Steiner were similarly situated to the extent that they were
both managers of Wal-Mart stores, and their evaluations identify
many of the same weaknesses and areas of improvement.  Rodrguez
argues that despite these similarities, Steiner received a rating
of "met expectations," while Rodrguez was rated as below
expectations.  Rodrguez further argues that Steiner was never
subjected to an opinion survey, and was not demoted.  In making
this comparison, however, Rodrguez fails to take into account the
fact that Steiner's evaluation was performed by a different
supervisor, covered a different period of time, and related to a
different store.  Because Rodrguez's and Steiner's evaluations
differ in these material respects, their comparison fails to
support a finding that Wal-Mart acted inconsistently in its
treatment of them.  In short, we agree with the district court that
a comparison of these evaluations yields no evidence of
discrimination, but rather evidence of different opinions by
different evaluators under different circumstances.
        Rodrguez next contends that he was subjected to
disparate treatment by Wal-Mart to the extent that he was held
accountable for the results of an opinion survey, while no other
non-Puerto Rican managers were subject to such an evaluation
procedure.  Rodrguez has presented no evidence to support this
claim.  However, even assuming arguendo that Rodrguez was in fact
the only manager subjected to an opinion survey, this is not
sufficient to prove intentional racial or national origin
discrimination on the part of Wal-Mart.  While this may prove
disparate treatment, there is simply no evidence that such
treatment was on account of Rodrguez's status as a Puerto Rican.  
Absent such evidence, Rodrguez cannot avert summary judgment.
        The same problem undermines Rodrguez's claim that the
timing of his evaluations by Cahill raises a "serious inference of
suspicious motives."  (Pl.'s Resp. to Def.'s Dispositive Mot. at
15.)  Cahill's initial November 17, 1994 evaluation was rendered
only eight months after Rodrguez started as manager of the Fajardo
store, and four months prior to his anniversary date of March 1995.  
Rodrguez points to Wal-Mart's Associate Handbook as evidence that
it was Wal-Mart's standard operating procedure to evaluate its
associates annually, on or near the associate's anniversary date.  
Rodrguez contends that Wal-Mart's deviation from this standard
operating procedure is evidence that Wal-Mart's proffered reasons
for demoting him were mere pretexts for discrimination.  Again, we
disagree.  As this court has previously explained, "[c]ourts may
not sit as super personnel departments, assessing the merits -- or
even the rationality of employers' nondiscriminatory business
decisions."  Mesnick, 950 F.2d at 825.  Although the evaluation
process may not have treated Rodrguez fairly, there is simply no
evidence that Wal-Mart's hasty evaluation was a pretext for
unlawful discrimination.
        In sum, Rodrguez has presented evidence that the reasons
proffered by Wal-Mart for his demotion may have been inaccurate.  
He has also presented evidence that he may have been treated
differently from other Wal-Mart managers to the extent that he was
subjected to an opinion survey.  But the fatal weakness in
Rodrguez's case is his failure to present any evidence that Wal-
Mart's actions were predicated on the basis of race or national
origin.  Unfortunately for Rodrguez, Title VII does not stop a
company from demoting an employee for any reason -- fair or unfair
-- so long as the decision to demote does not stem from a protected
characteristic, here, race or ethnicity.  See Mesnick, 950 F.2d at
825.  Based on our careful review of the record, we agree with the
district court that Rodrguez failed to present sufficient evidence
with respect to the ultimate issue in this case: whether Wal-Mart's
proffered reason for demoting him was actually a pretext for
unlawful discrimination.
B.  Rule 56(f)
        After the district court's grant of summary judgment,
Rodrguez filed a motion requesting a continuance in order to
conduct further discovery pursuant to Fed. R. Civ. P. 56(f).  The
gist of Rodrguez's argument is that he was misled by the district
court into believing that the only issue to be resolved by summary
judgment was the legal issue of whether  1981 was intended to
protect Puerto Ricans working in Puerto Rico.  As a result,
Rodrguez claims that his pre-judgment discovery efforts and the
evidence he submitted in opposition to Wal-Mart's motion were
limited to that specific legal issue.  In light of the district
court's unexpected ruling on the merits, Rodrguez argues that the
court's denial of his Rule 56(f) motion for a continuance
constituted an abuse of discretion.
        "It is well settled that the trial judge has broad  
discretion in ruling on pre-trial management matters."  Ayala-
Gerena, 95 F.3d at 91.  An appellate court will intervene in such
matters "only upon a clear showing of manifest injustice, that is,
where the lower court's discovery order was plainly wrong and
resulted in substantial prejudice to the aggrieved party."  Id.
(quoting Mack v. Great Atlantic & Pacific Tea Co., 871 F.2d 179,
186 (1st Cir. 1989)).  After careful review of the record, we
conclude that the district court acted within its discretion in
denying Rodrguez's post-judgment motion for a continuance.
        Although we agree that the district court did not act in
accordance with its own instructions and orders, we do not agree
that the court's inconsistency resulted in "substantial prejudice"
to Rodrguez.  Rodrguez's contention that he limited his discovery
efforts and legal arguments to the specific legal issue of whether
Puerto Ricans working in Puerto Rico are protected by  1981 is
disingenuous.  It is clear from our review of the record that, like
the district court itself, both parties disregarded the court's
limiting order.  In its motion to dismiss, Wal-Mart never even
addressed the issue of whether  1981 protected Puerto Ricans
working in Puerto Rico, but rather directly challenged the merits
of Rodrguez's claim.  Similarly, each of Rodrguez's three
oppositions marshaled factual evidence in support of his Title VII
claim.  In short, both parties blatantly disregarded the court's
categorization of the issue and briefed all three stages of a
1981 claim under the McDonnell-Douglas framework.
        In order to "savor the balm" of Rule 56(f), a party must
move for a discovery continuance in a timely fashion.  
Massachusetts Sch. of Law at Andover, Inc.  v.  American Bar.  
Assoc., 142 F.3d 26, 44 (1st Cir. 1998).  Although Rodrguez
requested time for additional discovery as early as his initial
opposition, he never claimed an inability to avert "the swing of
the summary judgment axe."  Paterson-Leitch Co. v. Mass. Municipal
Wholesale Elec. Co., 840 F.2d 985, 989 (1st Cir. 1988).  Instead,
Rodrguez continually  maintained that he had provided sufficient
evidence to raise the specter of intentional racial and/or ethnic
discrimination and withstand summary judgment on all grounds argued
by Wal-Mart.  Even Rodrguez's Rule 56(f) motion requested, in the
alternative, that judgment be vacated on the ground that he had
adduced sufficient evidence to preclude summary disposition of his
claim.
        In this respect, Rodrguez's position is similar to that
of the Title VII plaintiffs in Ayala-Gerena, who did not claim that
they were unable to oppose summary judgment because of incomplete
discovery, but rather, maintained that "although incomplete . . .
[these records] clearly reveal discriminatory animus."  Ayala-
Gerena, 95 F.3d at 92 n.4.  Ordinarily, a party "may not attempt to
meet a summary judgment challenge head-on but fall back on Rule
56(f) if its first effort is unsuccessful."  C.B. Trucking, Inc. v.
Waste Management, Inc., 137 F.3d 41, 44 (1st Cir. 1998).
        In addition, Rodrguez never sufficiently identified the
outstanding discovery that he believed would influence the outcome
of the summary judgment motion.  See Resolution Trust Co. v. North
Bridge Assoc., Inc., 22 F.3d  1198, 1203 (1st Cir. 1994) (Rule
56(f) motion "should set forth a plausible basis for believing that
specified facts, susceptible of collection within a reasonable time
frame, probably exist; and it should indicate how the emergent
facts, if adduced, will influence the outcome of the pending
summary judgment motion.").  In his third supplemental motion in  
opposition to summary judgment, Rodrguez merely stated that he was
"unable to provide in this Motion the additional evidence he
anticipated," (Pl.'s Supp. Mot. to His Opp. to Summ. Disposition at
2), without specifying what that additional evidence was or how it
might affect the pending motion.
        Finally, we agree with the district court that Rodrguez
had adequate time to conduct discovery, or at least to marshal
enough evidence to properly support a Rule 56(f) request for a
continuance.  Even assuming that Rodrguez did not initiate the
discovery process until the district court's April 30 discovery
order, almost nine months elapsed until judgment was granted on
January 13, 1998.  During this time, Rodrguez never requested
concrete measures by the district court to intervene in discovery.  
As a result, we conclude that the district court acted within its
discretion in denying Rodrguez's Rule 56(f) motion for a
continuance to conduct further discovery.
                           CONCLUSION
        For the above reasons, we affirm the district court's
grant of summary judgment in favor of defendant-appellee Wal-Mart.

</body>

</html>